### 45405. BOWEN v. GRIFFITH.
(366 SE2d 293)

WELTNER, Justice.

Bowen filed an action based upon OCGA § 45-7-8 that sought to remove Griffith from his office as chairman of the board of commissioners of Oglethorpe County. The trial court dismissed the complaint on the ground that the controversy was a political issue.

---

## *Factual background*

The following is undisputed:

Bowen is a taxpayer and resident of Oglethorpe County, and Griffith is the incumbent chairman of the board of commissioners of that county.

While he has been chairman, Griffith has served as road superintendent. He has devoted to that task a substantial amount of his time, and has been paid substantial salaries from county funds, in addition to his salary as chairman.

Griffith has received from the county treasury a monthly expense allowance of $200, without itemization of expenses actually paid by him.

## *Justiciability*

1. The fact that a controversy has political overtones does not place it beyond judicial review.

The law is equally as well settled that the judiciary is by the Constitution given the power and jurisdiction to adjudicate any and all justiciable questions presented to it in litigation, and that this jurisdiction of the courts is neither ousted nor impaired by the fact that there may be involved in such cases political questions. . . .

*Thompson v. Talmadge*, 201 Ga. 867, 871 (41 SE2d 883) (1947).

The complaint was not subject to dismissal for the reason assigned.

## *Removal of public officers*

2. Bowen contends that Griffith's acceptance of county funds in excess of his statutory salary as chairman, together with his acceptance of county funds as expense allowances without itemization, subjects him to removal from office. Bowen relies upon these statutes:

(a) OCGA § 45-7-8:

Any public officer who shall charge or take fees not allowed by law or for services not performed shall, on conviction or proof thereof, be dismissed from office.

(b) Section 7 (a) of the local act governing the board of commissioners of Oglethorpe County (Ga. L. 1986, p. 3586 et seq.):

The chairman of the board shall be compensated in the amount of $400.00 per month from the funds of Oglethorpe

County.

(c) Section 7 (c) of the same local act:

In addition to the compensation provided in subsections (a) and (b) of this section, the chairman and each member of the board shall be paid the reasonable and necessary expenses incurred in carrying out the duties of that person's office, which shall be paid from the funds of Oglethorpe County.

3. These factual and statutory elements generate the initial issues of this appeal:
(a) Is Griffith a "public officer?"
(b) Has he charged or taken "fees not allowed by law or for services not performed," as prohibited by OCGA § 45-7-8?
4. As to the first issue, Griffith is clearly a public officer within the meaning of the Code section.

An office is a public station or employment conferred by the appointment of the government. And any man is a public officer who is appointed by government, and has any duty to perform concerning the public; nor is he any the less a public officer because his authority or duty is confined to narrow limits.

*Polk v. James*, 68 Ga. 128, 131 (1881).
See also *Dorsett v. Garrard*, 85 Ga. 734, 737 (11 SE 768) (1890).
5. Regarding the second issue, however, OCGA § 45-7-8 does not apply to the payments to Griffith of additional salary and expense allowances.

The genesis of the Code section was the Act of 1792 (Cobb's 1851 Digest, p. 357). The context of that legislation was a system of local government in which, until recent times, many officers were compensated by fees that were paid by individual members of the public for specific services.[1] A public officer, having an ownership interest in fees collected, was required to carry out public duties in exact accord with the schedule of fees authorized by the General Assembly. Thus to "charge or take fees not allowed or for services not performed" under that former system was, at worst, extortion, and, at best, dereliction of duty.

Today, almost all public officers are compensated by salaries authorized by legislation and paid from general revenues. Thus, the ma-

---

[1] "The officers in most counties of the State are on a fee basis, i.e., no salaries are paid to the elective officials but their compensation is in fees. These fees are collected by county officers for services they render." Gosnell, Government and Politics in Georgia, 207 (1936).

jor evils sought to be prevented by the Act of 1792 do not inhere to a system that provides compensation for public officers through salaries.

6. As to Griffith's salary as road superintendent, we apply a narrow construction to the term "fees," consistently with the historical context of the Act of 1792, and with the traditional strict construction of forfeitures, e.g., removal from office under OCGA § 45-7-8. "Forfeitures and penalties are not favored." *Southern Discount Co. v. Ector*, 246 Ga. 30 (2) (268 SE2d 621) (1980). See also *Moore v. Beneficial Finance Co.*, 158 Ga. App. 535, 537 (281 SE2d 293) (1981).

7. As to the payment to Griffith of expense allowances, we construe the term "fees" as limited to "the charges for the services of a public officer in his official capacity." Ballentine's Law Dictionary, 3d ed., *ad loc.*

Because neither the payments to Griffith of a salary as road superintendent nor the expense allowances are "fees" within the meaning of OCGA § 45-7-8, the sanction of removal from office cannot apply.

### Remaining issues

8. These holdings do not, however, resolve all the issues of the case. Bowen's demand for judgment seeks "such other and further relief as may be just and proper."

OCGA § 9-6-24 provides:

Where the question is one of public right and the object is to procure the enforcement of a public duty, no legal or special interest need be shown, but it shall be sufficient that a plaintiff is interested in having the laws executed and the duty in question enforced.

Because Bowen contests the legality of certain expenditures of public funds, he states a claim for relief that is discrete from removal under OCGA § 45-7-8.

The disputed payments raise two additional issues: (a) the legality of unitemized expense allowances; and (b) the legality of the payment to Griffith of a salary as county road superintendent while he serves as chairman of the board of commissioners.

9. Concerning the first issue, the payment of fixed monthly expense allowances (as distinct from reimbursements for actual expenses) is not authorized by the controlling statute, as set out in Division 2 (c), supra. Because there is no evidence that Griffith paid out as "reasonable and necessary expenses" sums at least equal to those received by him as expense allowances, he must make accounting for the expense allowances he has received.

10. The second issue is whether Griffith lawfully may serve simultaneously as chairman of the board of commissioners and as road superintendent.

He may not.

11. Section 6 (a) of the local act requires that the chairman shall "[g]enerally supervise, direct, control, and provide for the administration of the affairs of Oglethorpe County." As chairman, then, Griffith must supervise, direct, and control the county road superintendent — who is, of course, himself.

> [N]o officer or agent, public or private, whose duty it is to supervise a contract in behalf of his employers or principal, can himself undertake to do that thing which his office or agency makes it his duty to supervise for others, and to see to it for them that it is well and faithfully done. The reason is too plain and palpable for serious dispute. The man becomes a judge in his own case. He agrees to perform work himself, and yet is to judge whether or not it is well done.

. . . It matters not how fair the contract may be; public policy will not uphold it. This principle is iterated and reiterated everywhere in the books.

*Mayor &c. of Macon v. Huff*, 60 Ga. 221, 224, 226 (1878).[2]

Long ago we described this inherent peril in these terms:

> Either he must violate the duty which he owes to his principal, or exercise a virtue rare amongst men — that is, sacrifice his own interest to that of another. To avoid this collision of interest, and to prevent a temptation to infidelity in his trust, the law imposes upon him a positive prohibition.

*Harrison v. McHenry*, 9 Ga. 164, 167 (1850).

For at least 110 years, our law has proscribed the duality of functions represented in this case.[3] The same law prohibits Griffith from serving simultaneously as chairman of the board of commissioners and as road superintendent.

---

[2] Our recent opinions have cited this case on several occasions. See *Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183, 189 (336 SE2d 562) (1985); *Dept. of Transp. v. Brooks*, 254 Ga. 303, 316 (328 SE2d 705) (1985); *Powell v. Thorsen*, 253 Ga. 572, 574 (322 SE2d 261) (1984); *Dept. of Human Resources v. Sistrunk*, 249 Ga. 543, 545 (291 SE2d 524) (1982).

[3] This is not to suggest that Griffith has failed to discharge, fully and honestly, both sets of duties. Nor are we aware of any prohibition upon the hiring by the county of a road superintendent, at an adequate salary.

*Relief*

12. The appeal is concluded with this direction:

(a) An accounting must be made as directed in Division 9, supra.

(b) Because the trial court has not considered the nature or extent of relief relative to Griffith's dual functions as chairman of the board of commissioners and as road superintendent, the case is remanded for further proceedings consistent with these holdings.

*Judgment reversed and remanded. All the Justices concur.*

DECIDED APRIL 7, 1988.

R. Dale Perry, for appellant.

Jacobs & Langford, Norman J. Slawsky, Hudson & Montgomery, James Hudson, for appellee.