46777. BOWERS v. BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA et al.
(378 SE2d 460)

PER CURIAM.

The only issue presented to us on this appeal is the question of the standing of the Attorney General, who brought an action against the Board of Regents to require the disclosure of certain records. The merits of the claim were not addressed, as the trial court dismissed the complaint for want of standing.

The basic issue (as to disclosure) has been resolved in favor of the Attorney General's position by our holding in *Bd. of Regents of the University System of Ga. v. The Atlanta Journal & The Atlanta Constitution*, 259 Ga. 214 (378 SE2d 305) (1989), which held that the very same records must be produced for public inspection.

In this case, we are asked to reverse the trial court on the issue of standing. But for what purpose? Our ruling in *Regents* leaves nothing to be decided by the trial court, and a reversal of this case most assuredly would result in a second dismissal by the trial court, this time on the ground of mootness. The existence of an actual controversy is fun-

damental to a decision on the merits by this court.[1] An advisory opinion on our part concerning the Attorney General's standing to sue an executive agency of the state would be meaningless as respects the controversy over which this action was brought. See *Bd. of Trustees v. Kenworthy*, 253 Ga. 554, 557 (322 SE2d 720) (1984); *Chastain v. Baker*, 255 Ga. 432 (339 SE2d 241) (1986).

The issue of standing encompasses several important elements, including our constitution; statutes of the General Assembly, their relationship to our constitution, and to each other; the powers of the chief executive[2] of the state; and the powers of the Attorney General. Thus, the concerns are those of constitutional and statutory construction. And while it may be that some of the background of this controversy includes political considerations, the mere existence of a political issue does not oust the judicial system of its jurisdiction, nor relieve it from the burden of decision, when that is appropriate.[3] Nonetheless, there seems to be little value in undertaking so ponderous a query when, in whatever manner it might be resolved, the inevitable result in this action will be its dismissal.

*Dismissed as moot. All the Justices concur, except Smith, J., who dissents.*

SMITH, Justice, dissenting.

I respectfully dissent to this Court's dismissal of the above case as "moot."

On March 3, 1989 Judge Luther Alverson dismissed the Attorney General's action in this case "due to the lack of authorization of the Attorney General to bring the same without authorization of the Governor. . . ." Standing is not an issue and has never been an issue in this case. The issue as can be seen by reading the trial court order is whether the Attorney General has authority to file a suit without the authorization of the Governor. That is an entirely different question than a standing question. The Attorney General filed an appeal with this Court in which he enumerated the following error:

The Superior Court of Fulton County *erred* in dismissing the Attorney General's suit . . . on the ground that the Attorney

---

[1] A narrow exception to the actual controversy rule is that the question is "capable of repetition, yet evading review." This case does not fit within that exception. Certainly the standing issue is capable of repetition, but no reason appears why it would evade review. *Chastain v. Baker*, supra at 434. See also *DeFunis v. Odegaard*, 416 U. S. 312 (94 SC 1704, 1707, 40 LE2d 164) (1974).

[2] Because the Governor has not been made a party to this appeal, his views have not been presented to the court.

[3] *Thompson v. Talmadge*, 201 Ga. 867 (41 SE2d 883) (1947); *Bowen v. Griffith*, 258 Ga. 162 (366 SE2d 293) (1988).

General was without authority to bring suit absent authorization of the Governor. [Emphasis supplied.]

Brief of Attorney General, p. 4.

On March 24, 1989, Judge Don A. Langham entered a 16-page order in which the judge addressed five legal issues involved in the case between the Board of Regents and the Atlanta newspapers. The Regents enumerated three errors on appeal based solely upon Judge Langham's interpretation of the Open Records Act. *Bd. of Regents of the University System of Ga. v. The Atlanta Journal & The Atlanta Constitution*, 259 Ga. 214 (378 SE2d 305) (1989).

As can be readily seen, there were two separate cases before two separate judges who decided entirely different issues in two separate orders 24 days apart. Both cases were appealed separately to this Court based on entirely different enumerations of error that were in no way related to one another. The issue in the newspaper case was the Open Records Act, the issue in this case was the Attorney General's authority to file suit without the authorization of the Governor.

The per curiam opinion dismisses this case as being "moot." This case is not "moot."

"Moot" cases are defined as follows:

> A case is "moot" when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy. [Cit.] Question is "moot" when it presents no actual controversy or where the issues have ceased to exist. [Cit.]

> Generally, an action is considered "moot" when it no longer presents a justiciable controversy because issues involved have become academic or dead. [Cit.] Case in which the matter in dispute has already been resolved and hence, one not entitled to judicial intervention unless the issue is a recurring one and likely to be raised again between the parties. [Cit.]

Black's Law Dictionary at 909. See also *Chastain v. Baker*, 255 Ga. 432 (339 SE2d 241) (1986).

This case presents an actual, justiciable controversy based on the facts and the law entered by the lower court, and the issue presented in this appeal is neither academic nor dead. This case involves a matter of constitutional and statutory construction. Only this Court has the power to make a final interpretation of the Georgia Constitution and statutes. It is our solemn duty to perform the duties assigned to us by the constitution and the statutes of this State; the highest of those duties is the interpretation of the Georgia Constitution and the statutes.

The Constitution vests . . . all judicial power in the courts. Art. 6, sec. 1, par. 1. . . . [C]onstruing the Constitution and the statutes is the function of the judiciary, and that the General Assembly has no power to make such construction. By this was meant that determining the meaning of the Constitution, which is binding upon everyone, was the exclusive function of the courts in the adjudication of cases properly brought before them for decision. *Therefore, it must be held that if in the present cases a construction of the Constitution is involved, that is a justiciable question which the courts have the exclusive jurisdiction to adjudicate in determining such cases.*

. . .

. . .We have in this State a government of laws under a written Constitution. It requires the full discharge of their respective functions by each of the three coordinate departments of government to effectually operate the government and administer the laws. There is provided in this governmental scheme no other authority for the orderly adjudication and settlement of justiciable cases except the judicial department. *Failure on the part of the judiciary to function would leave all such matters unsettled, and anarchy would prevail. . . . [By] virtue of the power vested in it by the Constitution the judiciary can and must, when called upon in a case before it, adjudicate and decide all justiciable questions, whether they relate to the action of the other departments or not.* [Emphases supplied.]

*Thompson v. Talmadge*, 201 Ga. 867, 872-874 (41 SE2d 883) (1947). Another important principle enunciated in *Thompson v. Talmadge*, and reaffirmed in *Bowen v. Griffith*, 258 Ga. 162, 163 (366 SE2d 293) (1988), is: "The fact that a controversy has political overtones does not place it beyond judicial review."

As recognized by the per curiam opinion, "the concerns are those of constitutional and statutory construction." This is a justiciable case, it involves a "construction of the Constitution." *Thompson*, supra at 872-873. The issue in this case was "properly brought before [this Court] for decision." *Thompson*, supra at 872, on an enumerated error.

It matters not that the issue regarding disclosure of the records was resolved in the newspaper case. The issue in *this case* does not involve records. From the moment the motion to dismiss was filed in the trial court, the only issue in *this case* was the Attorney General's

authority to file suit without the authority of the Governor. It was the only issue argued on the motion in the trial court, it was the only issue ruled upon by Judge Alverson, it was the only issue enumerated on appeal, it was the only issue argued before this court. The ruling in the newspaper case in no way ends the controversy regarding whether or not the Attorney General may file suit without the authority of the Governor. We have a duty to address the error enumerated by the Attorney General.

The per curiam opinion implies that there is not an actual controversy in this case. The issue in this case is not an abstract question. An abstract question is "One which does not rest upon existing facts or rights. [Cit.] Hypothetical question." Black's Law Dictionary at 10. The issue presented to us on appeal rests upon existing facts as found in the trial court and *very important constitutional rights.* This in no way could be considered a "hypothetical question."

A decision in this case would not be an advisory opinion. An advisory opinion is one that indicates how the court would rule on a matter in the event an actual controversy should develop. It is an interpretation of the law with no binding effect. There is an actual controversy here, and it is one of constitutional magnitude. *Thompson,* supra at 873-874, makes it clear that when a case involves the construction of the constitution that it:

> [I]s a justiciable question which the courts have the exclusive jurisdiction to adjudicate. . . . [And by] virtue of the power vested in [this Court] by the Constitution [this Court] can and must, when called upon in a case before it, adjudicate and decide all justiciable questions, whether they relate to the action of the other departments or not.

The majority insisting that the issue is one of "standing" comments in footnote one that the issue is capable of repetition, and "no reason appears why it would evade review." This case represents the second time that this important constitutional issue (that the majority calls standing) has been before this Court on an expedited appeal and the second time it has evaded review.[4] This is a justiciable ques-

---

[4] Just one year ago the issue of the Attorney General's power to act without the authority of the Governor was before this Court, but the issue was never reached. An order dated March 10, 1988 stated that this Court found that an amendment to the Rules of the State Bar of Georgia, Part IV (Discipline), Chapter 1, Rule 4-102 rendered "moot" the complaint against the Attorney General. A brief filed with this Court by Michael J. Bowers in *The State Bar of Georgia v. Bowers,* No. 45478 stated: "[T]he Attorney General cannot be limited, as the Board argues, to enforcing state law when ignored by officials in the executive branch of the government *only when the Governor authorizes a suit.*" (Emphasis supplied.) Record at p. 66.

tion, and we are required to "adjudicate and decide all justiciable questions, whether they relate to the action of the other departments or not." *Thompson,* supra at 874.

The majority states that "we are asked to reverse the trial court on the issue of standing. But for what purpose?" The Attorney General has never asked the court to reverse the lower court on standing. Standing has never been an issue. The issue of vital importance to the Attorney General is whether the Attorney General has the authority to file suit without the authorization of the Governor. The Attorney General has asked us to reverse the trial court on the issue of his authority. For what purpose? For the vital purpose of knowing exactly what his constitutional and statutory duties are relative to the Governor.

Without an adjudication by the only authority with the power to do so, the Attorney General will be faced with uncertainty each time he enters a court in this State. Leaving the lower court decision in place by "mooting" his case will ultimately cost everyone.

(a) The Attorney General will be faced with either obtaining authorization from the Governor before entering a court or face the prospect of having a motion to dismiss filed against him.

(b) The Attorney General and his staff will have to expend time and resources fighting motions to dismiss. Perhaps some filed by the Governor. The needless litigation of *State v. State,* will ultimately be borne by the taxpayers.

(c) The Attorney General faces the prospect of being again dismissed under like circumstances only once again to find that his "standing" is a moot issue in the eyes of the majority of this Court.

(d) This Court will have once again set aside all other business to expedite an appeal from the Attorney General.

Judicial economy dictates that this serious constitutional question which is properly before this Court be resolved. As stated by the dissent in *Bd. of Trustees v. Kenworthy,* 253 Ga. 554, 560 (322 SE2d 720) (1984) (Smith, J., dissenting):

> This court has recognized that in some instances, the construction of a statute, and an analysis of the statute relative to the constitution, "will have the effect of simplifying future challenges," so that the need for judicial economy allows the court to reach the merits. [Cit.]

Dismissing this suit as "moot" only causes delay in the final resolution and creates uncertainty. The Attorney General and the people of this State deserve a final answer on this issue today, not a few months hence when the same issue will again be on expedited appeal before this Court. As stated by the dissent in *Bd. of Trustees v. Ken-*

*worthy*, supra at 561, (citing *Brown v. Housing Auth.*, 240 Ga. 647, 653 (242 SE2d 143) (1978) (Smith, J., dissenting)): "Because the rights of the public are involved, we (should) proceed to the merits, including consideration of the Constitution. . . ."

I would decide this case today and determine the constitutional and statutory rights of the Attorney General. I would not leave him in a state of uncertainty until another case can be brought to resolve this important question.

DECIDED APRIL 25, 1989.

Michael J. Bowers, Attorney General, pro se.

William B. Hill, Jr., Stephanie B. Manis, Deputy Assistant Attorneys General, for appellant.

Alston & Bird, G. Conley Ingram, Robert D. McCallum, Jr., Walter G. Elliott II, Arthur K. Bolton, for appellees.

Forrest L. Champion, Robert E. Wilson, David E. Hudson, Emmet J. Bondurant, Dirk G. Christensen, Terrence B. Adams, Peter C. Canfield, James A. Demetry, William O. Miller, G. Stephen Parker, Robert B. Baker, amici curiae.