## 46821. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA et al. v. THE ATLANTA JOURNAL & THE ATLANTA CONSTITUTION et al.

(378 SE2d 305)·

WELTNER, Justice.

Pursuant to the Open Records Act, OCGA § 50-18-70 et seq., two newspapers made the following request of the Board of Regents and its chancellor:

> We request records on all candidates considered or currently in contention for the presidency of Georgia State University. We request complete records, including resumes, letters of recommendation, vitae, and all other information the presidential search committee has compiled on each of the candidates.

When the Board of Regents denied the request, the newspapers brought an action against them to require production of the documents. The trial court ordered that the Board of Regents produce the following documents:

> [R]ecords pertaining to the candidates of the Georgia State University presidential search which have been requested by the [newspapers] except the following:
> 1. Evaluations of the candidates which have been prepared by the Board members or their staff; and,
> 2. Confidential evaluations of the candidates by third-parties, such as letters of recommendations.

The Board of Regents appealed.

### Applicability of the Act

1. (a) The Open Records Act encompasses: "All state, county, and municipal records. . . ." (See Div. 2 (a), below.) The Board of Regents now exists by virtue of the Constitution of Georgia and acts of the General Assembly. It is an agency of the state.[1]

The Board of Regents is subject to the Act.

(b) The Act further provides:

---

[1] The Constitution of Georgia of 1983 specifies: "There shall be a Board of Regents of the University System of Georgia. . . ." Art. VIII, Sec. IV, Par. I (a). OCGA § 20-3-20 (a) provides: "The board of regents is created." See OCGA § 20-3-80, referring to the "board of regents, a state agency." See also *Macon Telegraph Publishing Co. v. Bd. of Regents of the University System of Ga.*, 256 Ga. 443 (350 SE2d 23) (1986).

As used in this article, the term "public record" shall mean all documents, papers, letters, maps, books, tapes, photographs, or similar material prepared and maintained or received in the course of the operation of a public office or agency. [OCGA § 50-18-70 (a).]

The records sought are public records.

### Statutory Requirements

2. (a) The Act requires:

All state, county, and municipal records, except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to inspection by the general public, shall be open for a personal inspection by any citizen of this state at a reasonable time and place; and those in charge of such records shall not refuse this privilege to any citizen. [OCGA § 50-18-70 (b).]

(b) Among records exempt from these requirements are:

Records that consist of confidential evaluations submitted to, or examinations prepared by, a governmental agency and prepared in connection with the appointment or hiring of a public officer or employee. [OCGA § 50-18-72 (a) (5).]

(c) Appended to the section creating exemptions is this provision:

This Code section shall be interpreted narrowly so as to exclude from disclosure only that portion of a public record to which an exclusion is directly applicable. It shall be the duty of the agency having custody of a record to provide all other portions of a record for public inspection or copying. [OCGA § 50-18-72 (f).]

### Scope of the Exemption

3. (a) The question remains as to whether the records requested by the newspapers are:

. . . confidential evaluations submitted to. . .a governmental agency and prepared in connection with the appointment or hiring of a public officer or employee. [Div. 2 (b), above.]

(b) The Act directs a narrow construction of its exclusions, exempting "*only* that *portion* of a public record to which an exclusion is

*directly* applicable." (Div. 2 (c), above. Emphasis supplied.) As example, the applications submitted by candidates for the position of president, and the resumes and vitae requested by the newspapers, are products of the applicants themselves. They are materials upon which, in part, "confidential evaluations" are based.

They are not evaluations,[2] hence they are not exempt.

### The Public Interest

4. The Board of Regents maintains that the public interest requires that all records of its search committee, including those not exempt, be withheld from public scrutiny. It insists that its ability to attract qualified applicants will be diminished by the disclosure of their identities, in disservice of the cause of higher education. We acknowledge that this preference may be justifiable as a matter of good practice.[3] Our inquiry, however, must be whether, as a matter of law, the nondisclosure of such records may be permitted.

(a) The first discussion by this court of the "public interest" (as distinct from statutory application) relative to Open Records laws is found in *Houston v. Rutledge*, 237 Ga. 764, 765, 766 (229 SE2d 624) (1976), in a case concerning records of criminal investigations that had been concluded. There we stated:

> When a controversy of this nature arises between a citizen and a public official, the judiciary has the rather important duty of determining whether inspection or non-inspection of the public records is in the public interest. In short, the judiciary must balance the interest of the public in favor of inspection against the interest of the public in favor of non-inspection in deciding this issue. . . .

> [In] our construction of this statute we have attempted to apply First Amendment principles which favor open, unfettered communication and disclosure except where some limitation thereon is required in the public interest.[4]

---

[2] See Webster's Third New International Dictionary: "*Evaluate*: to examine and judge concerning the worth, quality, significance, amount, degree, or condition of."

[3] See Presiding Justice Clarke's concurring opinion, below.

[4] *Houston v. Rutledge* is silent as to the origins and lineaments of this "limitation . . . required in the public interest." Note, however, Justice Ingram's concurring opinion:

> Therefore, unless the sheriff [i.e., the custodian of the records] on remand can show some persuasive reason why the files should not now be made available for public inspection, I believe we have a duty under the First Amendment to the United States Constitution and Code Ann. § 40-2701 [OCGA § 50-18-70] to require the files to be made available for public inspection without further delay.

Id. pp. 766-7.

(b) In cases coming after *Houston v. Rutledge,* we have interpreted this "limitation . . . required in the public interest" as the necessity to protect against an unwarranted intrusion into an individual's private life, where there is no legitimate right of the public to inquire into private matters that are unrelated to the public business.

> The invasion of personal privacy encompassed as an exception to the right of the public to access is to be determined by an examination of the tort of invasion of privacy.

*Harris v. Cox Enterprises,* 256 Ga. 299, 301 (348 SE2d 448) (1986). See also *Athens Observer v. Anderson,* 245 Ga. 63, 65, 66 (263 SE2d 128) (1980):

> The right of privacy, protectable in tort, however, extends only to unnecessary public scrutiny. . . . We find nothing in the report which would give rise to an action for invasion of privacy.[5]

(c) In this appeal, there is no claim on behalf of any individual of an invasion of personal privacy.[6] It is not a *personal* right to privacy that is urged upon us, but rather a *corporate* preference for privacy, which is considered to be desirable for the efficacious administration of a public function.

(d) In his concurring opinion, Presiding Justice Clarke aptly observes:

> The public policy issue of what information or actions involved in a search for an official may be withheld from disclosure rests with the legislative branch.

The General Assembly has defined, directly and specifically, the

---

[5] Our more recent decision in *Napper v. Ga. Television Co.,* 257 Ga. 156 (356 SE2d 640) (1987) relied upon both the *Athens Observer* and *Harris* cases:
"The tort of invasion of privacy protects "(t)he right of a person. . .to be free from unwarranted publicity, . . . or the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern.". . . "While this state has a strong policy of open government, there is a corresponding policy for protecting the right of the individual to personal privacy. References to matters about which the public has, in fact and in law, no legitimate concern, though found in a public document[,] are not subject to disclosure under the Public Records Act because they are not the subject of "legitimate public inquiry."
Id. pp. 160, 161

[6] In the circumstances before us, it would make for a strange rule, indeed, to hold that a person who applies for a public position — to serve the public and to be paid by the public — has the right to keep secret from the public the very existence of such an application.

extent of permissible secrecy as to the appointment of public officers or employees (Div. 2 (b), above). That is clearly within its prerogative.

(e) The "limitation . . . required in the public interest" of *Houston v. Rutledge* never has been interpreted to authorize courts to impose their own preferences upon the operation of the executive branch. There being here no competing interest to measure against the demand of the Act, we have nothing to balance.

*Conclusion*

5. The trial court correctly designated those records that are exempt by the Act, and correctly required production of the remaining documents.

*Judgment affirmed. All the Justices concur, except Marshall, C. J., Smith and Bell, JJ., who dissent.*

CLARKE, Presiding Justice, concurring.

I concur in the majority opinion because of the statutory provision mandating a narrow interpretation of the section allowing exclusion from the disclosure provision. OCGA § 50-18-72 (f).

I take this position in spite of my concern that the disclosure of search committee activities, including the names of applicants, may result in diminishing the quality of the applicant pool. I point out, however, that this case involves no constitutional issues but only an interpretation of statutory enactments of the legislature. The public policy issue of what information or actions involved in a search for an official may be withheld from disclosure rests with the legislative branch. I believe the legislative branch has the power to exclude from disclosure names of persons considered. But in view of the requirement of narrow interpretation, I do not believe it has done so as yet.

GREGORY, Justice, concurring.

I concur in the majority opinion and its construction of OCGA § 50-18-72 (a) (5), and write to address matters presented in the dissenting opinion of Chief Justice Marshall.

1. The dissenting opinion would have us hold that the entire search process is an evaluation or examination of the candidates. I reach a different conclusion because I read subsection (5) to distinguish "confidential evaluations" and "examinations" from other material gathered during the search process. Consider that the second part of subsection (5) deals with investigations of complaints against public officials or employees and it exempts from public disclosure all "material" obtained in an investigation. This suggests to me that a great deal of material may be collected in a search process but only "confidential evaluations" and "examinations" are exempted.

2. Another issue suggested in the dissenting opinion presents a

closer question in my view. That is the matter of construing OCGA § 50-18-72 (a) (5) with reference to the open meetings law. OCGA § 50-14-3 (6).

OCGA § 50-14-3 (6) excludes from the open meetings requirement, "[m]eetings when discussing or deliberating upon the appointment, employment, hiring, disciplinary action or dismissal, or performance of a public officer or employee. . . ." At first glance it might seem that a conflict exists because a meeting may be closed to discuss or deliberate upon the very material which must be disclosed as a public record. But I believe the provisions are in harmony.

What both protect from public disclosure is the give and take among decision makers so that they may make candid and difficult comparisons of the qualifications of candidates for public office and employment, and their performance once selected. That is why evaluations and examinations are exempted under the public records law and that is why discussions and deliberations about appointments and the like are exempted under the public meetings law. This does not mean however that the identity and other information about candidates, officials, and employees is exempted. Thus, both statutes protect the need for open and candid discussion about these matters but they do it in a very narrow way.

MARSHALL, Chief Justice, dissenting.

I respectfully dissent.

1. Pretermitting the issue of whether or not the Board of Regents was subject to be sued, and assuming that all of the documents in question are "public records" within the meaning of OCGA § 50-18-70, I would hold that all of the records sought here come within the exclusion of OCGA § 50-18-72 (a) (5).

While it is true that the statute provides that "[t]his Code section shall be interpreted narrowly so as to exclude from disclosure only that portion of a public record to which an exclusion is directly applicable," OCGA § 50-18-72 (f), I view the *entire search process* as an "evaluation" or "examination" of the candidates for the presidency of Georgia State University. The so-called Open and Public Meetings Act, or "Sunshine Law" does not apply to "[m]eetings when discussing or deliberating upon the appointment, employment, hiring, disciplinary action or dismissal, or performance of a public officer or employee. . . ." OCGA § 50-14-3 (6). These two Acts, including the two provisions exempting meetings and records respecting the hiring and appointing of government officers and employees, were significantly amended and rewritten in the 1988 legislative session. They must be construed in pari materia, as has been held in *The Atlanta Journal & The Atlanta Constitution v. The Atlanta Convention & Visitors Bureau, Inc.*, Fulton County Superior Court Civil Action File

No. D-63684, decided March 14, 1989. The trial court's construction of the Open Records Act in the present case is contrary to the legislative intent, as expressed in that Act and the Sunshine Law, to protect from disclosure the process of selecting new government officers and employees. In addition, under the trial court's order, minutes of the very meetings which are closed under the Sunshine Law would be subject to disclosure.

The trial court's refusal to construe the Open Records Act in pari materia with the Sunshine Law was based upon the case of *Irvin v. Macon Telegraph Publishing Co.*, 253 Ga. 43 (316 SE2d 449) (1984). In that case, the court did not even refer to the doctrine of in pari materia. The issue in that case was only whether or not a 1980 amendment to the Sunshine Law defining "public records" should be read into the Open Records Act. This Court held only that it should not, because the Court had, prior to the 1980 amendment, defined "public records" under the Open Records Act, and, had the Legislature wished to depart from that established definition, it also could have amended the Open Records Act. That case is not applicable here. It is not necessary to look to the Sunshine Law for the definition of an Open Records Act previously defined by this Court. We need only apply the basic doctrine of in pari materia so as to construe the exclusion set out in OCGA § 50-18-72 (a) (5) in harmony with its sister Sunshine Law exclusion. Furthermore, the *Irvin* case was decided before the Legislature significantly amended both Acts. Indeed, the subject Open Records Act exclusion in question was added in 1988, and thus conformed the Open Records Act to the parallel Sunshine Law exclusion.

The judgment of the trial court was erroneous to the extent that it permitted disclosure of any portion of the records maintained in connection with the presidential search.

2. I also find that the records should be exempt by order of court. In *Napper v. Ga. Television Co.*, 257 Ga. 156, 161 (356 SE2d 640) (1987), we held as follows:

> If the records are public records and *do not fall within any of the exemptions set out in the Public Records Act*, the question is whether the records should be protected from disclosure by court order under § 50-18-70 (a) [redesignated as subsection (b) by Ga. Laws 1988, pp. 243, 244].

> In regard to whether public records should be protected by court order, we have held, "[w]hen a controversy of this nature arises between a citizen and a public official, the judiciary has the rather important duty of determining whether inspection or non-inspection of the public records is in the

public interest. In short, the judiciary must balance the interest of the public in favor of inspection against the interest of the public in favor of non-inspection in deciding this issue." [Cit.] [Emphasis supplied.]

Accord *Athens Observer, Inc. v. Anderson*, 245 Ga. 63, 66 (263 SE2d 128) (1980).

Applying the foregoing balancing test to the records in question, I conclude that the public interest in favor of non-inspection outweighs the public interest in favor of inspection.

I am authorized to state that Justice Smith joins in this dissent.

DECIDED APRIL 25, 1989 —
RECONSIDERATION DENIED MAY 10, 1989.

*Alston & Bird, G. Conley Ingram, Robert D. McCallum, Jr., Walter G. Elliott II, Richard T. Fulton,* for appellants.

*Dow, Lohnes & Albertson, Terrence B. Adams, Peter C. Canfield,* for appellees.

*Michael J. Bowers, Attorney General, Stephanie B. Manis, Deputy Assistant Attorney General, Paul R. Vancil,* amici curiae.