S92A1177. GWINN et al. v. STATE ETHICS COMMISSION et al.
(426 SE2d 890)

HUNT, Presiding Justice.

The State Ethics Commission determined that appellant Southern General Insurance Company and its president, appellant Gwinn, violated the "Ethics in Government Act," specifically OCGA § 21-5-30.1,[1] by placing a full-page newspaper ad supporting the candidacy of the incumbent insurance commissioner who was seeking re-election.[2] The State Ethics Commission concluded that the purchase of

---

[1] At the time of the incident involved herein, OCGA § 21-5-30.1 (b) stated:
No . . . [insurer] and no person or political action committee acting on behalf of a[n] . . . [insurer] shall make a contribution to or on behalf of a person holding office as [Commissioner of Insurance] or to or on behalf of a candidate for the office of [Commissioner of Insurance] or to or on behalf of a campaign committee of any such candidate.
OCGA § 21-5-30.1 (d) contained the proviso that the statute should not be construed to prevent any person employed by an industrial loan licensee or insurer from voluntarily making a campaign contribution from that person's private funds.

[2] The ad read as follows:
Dear Neighbor:
"Elect me Insurance Commissioner and I will *reduce* your auto insurance rates___%."
(You fill in the number).
Sound familiar? Sound too good to be true? *It is!* The courts have said several times that you can't cut auto insurance rates with a magic wand.
We are a Cobb County based insurance company. We pay Cobb County taxes and employ Cobb, Bartow, Paulding, and Cherokee County folks and we'd like to tell you, our neighbors, the truth.
The Atlanta newspapers, in their quest to scalp Commissioner Warren Evans, have tried to convince you that our industry is running up the cost of auto insurance for the sake of profit.
BALONEY!
Auto insurance rates go up when costs rise, Insurance companies don't print money. They get it from you. Medical costs are way up — so are auto repair costs.

the ad was a "contribution" under OCGA § 21-5-30.1 (a) (2), and that the phrasing of the ad, clearly indicating it was expressing the opinion of the insurance company, demonstrated the contribution was made on behalf of an insurer for the benefit of the campaign of a candidate for insurance commissioner, an act prohibited by OCGA § 21-5-30.1 (b). The superior court which reviewed the decision of the administrative agency upheld the constitutionality of the statute against appellants' contentions that it violated their constitutionally-protected freedom of speech and was a denial of due process and equal protection. We granted appellants' application for discretionary review to address the validity of the statute under the constitutions of the United States and Georgia.[3]

1. The use of funds to support a political candidate is "speech," and OCGA § 21-5-30.1 (b) limits "political expression ' "at the core of our electoral process and of the First Amendment freedoms." ' [Cits.]" *Austin v. Michigan Chamber of Commerce*, 494 U. S. 652, 657 (110 SC 1391, 108 LE2d 652) (1990).[4] Southern's corporate status does not remove its speech from the ambit of the First Amendment. Id. To decide whether the statute's restriction on Southern's political

---

Add to this the cost that you, as an insured driver, must pay for the accidents of those who break the law and *don't* carry insurance. Add the legal costs of the system — the "TV" lawyers and medical practitioners and the "runners" who solicit for them at even small accident scenes.

Lastly, add the cost of built-in problems in a No-Fault law that needs major surgery — not just a Band-Aid. Insurance companies have been hog-tied in their efforts to fight insurance fraud (which *you* pay for) by legislation that so severely penalizes their honest efforts that our industry doesn't dare do its job of resisting fraudulent claims.

In such a mess, rates go up and it doesn't matter *who* is Commissioner of Insurance.

While we don't always agree with him, our present Insurance Commissioner, *Warren Evans*, is an honest man trying to do a good job. We know he will continue to try to convince the Legislature (as he did in 1989 and 1990) to overcome the influence of the Plaintiff's Bar, unscrupulous medical practitioners and others who profit at *your* expense, and to reduce your insurance rates the *proper way* — by reducing costs.

We support and hope you will vote for *Warren Evans* for Insurance Commissioner August 7th.

SOUTHERN GENERAL INSURANCE COMPANY

[3] Because appellants have never argued that their conduct did not constitute a violation of OCGA § 21-5-30.1 (b) and admitted on appeal to the superior court that they were guilty of violating the statute, we assume, without deciding, that their conduct was violative of the statute. Therefore, we do not decide whether the statute only prohibits contributions made pursuant to the request or authority of the commissioner, his campaign committee, or any other agent.

[4] The First Amendment to the U. S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . .," and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Carr v. State*, 176 Ga. 55 (1) (166 SE 827) (1932). The 1983 Georgia Constitution states that

No law shall be passed to curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish sentiments on all subjects but shall be responsible for the abuse of that liberty.

Art. I, Sec. I, Par. V.

expenditures is constitutionally permissible, we must determine whether the restriction burdens the exercise of political speech and, if so, whether the statute is narrowly tailored to serve a compelling state interest. Id.

2. Since OCGA § 21-5-30.1 (b)'s prohibition against Southern making a campaign contribution to the Commissioner of Insurance or a candidate for that office does burden expressive activity, and is "intimately related to the process of governing," the State must justify the burden by establishing a compelling state interest. *First Nat. Bank of Boston v. Bellotti*, 435 U. S. 765, 786 (98 SC 1407, 55 LE2d 707) (1978). The State asserts that the prevention of corruption or the appearance of corruption through campaign contributions is a legitimate and compelling governmental interest that permits the absolute prohibition of campaign contributions from a regulated entity to the regulator or a candidate for the office of regulator. See *Austin v. Michigan Chamber of Commerce*, supra at 1397. We agree. The General Assembly enacted the "Ethics in Government Act" "in furtherance of [the State's] responsibility to protect the integrity of the democratic process and to ensure fair elections. . . ." OCGA § 21-5-2. The State, through its legislative branch, has a legitimate interest in preserving the integrity of the democratic process by forbidding a regulated entity from contributing to the holder of the office which oversees the regulation of the entity, or a candidate for that office.

3. The next issue for determination is whether the legislative infringement on freedom of speech which is supported by a compelling state interest is narrowly tailored to achieve the compelling state interest. The General Assembly believed that the democratic process was threatened when a regulated entity was permitted to contribute to the campaign of one seeking the office of regulator. Prohibiting contributions by the regulated entity to anyone holding or seeking to hold that office eliminates the threat perceived by the legislature. Inasmuch as the regulated entity is free to contribute to all other political campaigns, we conclude that OCGA § 21-5-30.1 (b) is narrowly tailored to meet the threat to the democratic process perceived by the General Assembly.

4. Southern also contends that OCGA § 21-5-30.1 (b) permits an unconstitutional deprivation of property rights without due process. Southern argues that if it and Gwinn are not permitted to provide the voting public with information they alone possess regarding the capabilities of a candidate for the office of insurance commissioner, they run the risk that the voters might elect an insurance commissioner who would initiate policies adversely affecting appellants' business interests. OCGA § 21-5-30.1 (b) does not prohibit a Southern employee, who is not acting on behalf of the corporation, from contributing to

the campaign of anyone seeking the office of insurance commissioner;[5] and OCGA § 21-5-30.1 (b) does not prevent the dissemination of information by Southern, as long as the dissemination is not done for the purpose of influencing the nomination or election of an individual to the office of insurance commissioner, or encouraging the current commissioner to seek reelection. Thus, enforcement of OCGA § 21-5-30.1 (b) does not work the danger to due process that appellants foresee.

We conclude that OCGA § 21-5-30.1 (b) is not an unconstitutional infringement upon the freedom of speech as guaranteed by the constitutions of the United States and Georgia.

*Judgment affirmed. Clarke, C. J., Fletcher, Sears-Collins, JJ., and Judge Frank C. Mills III concur; Benham and Hunstein, JJ., concur specially.*

BENHAM, Justice, concurring specially.

While I agree with the majority's insightful analysis of the constitutionality of OCGA § 21-5-30.1, I write separately in order to closely scrutinize the statute and measure appellants' actions against it. Upon review of the statutory scheme, I conclude that appellants' actions did not violate OCGA § 21-5-30.1 (b).

The State Ethics Commission was authorized to assess a fine for violation of OCGA § 21-5-30.1 (b) (see OCGA § 21-5-6 (14)), and did impose a fine of $250 on each appellant after finding they had violated the law. Inasmuch as the law does not favor forfeitures and penalties, we must strictly construe the statute. *Bowen v. Griffith*, 258 Ga. 162 (6) (366 SE2d 293) (1988).

There is no question that Gwinn was acting on behalf of Southern General, an insurer, when he placed the newspaper ad. The question is whether the placement of the ad constituted a forbidden "contribution," as that term is defined in OCGA § 21-5-30.1 (a) (2).

In construing the statute, I am mindful that the cardinal rule is to ascertain the legislative intent and purpose in enacting the statute, and then give that construction which will effectuate the legislative intent and purpose. *City of Calhoun v. N. Ga. EMC*, 233 Ga. 759 (1) (213 SE2d 596) (1975). The passage of OCGA § 21-5-30.1 and its subsequent amendment to include all elected constitutional officers in the executive branch (Ga. L. 1992, p. 1075; OCGA § 21-5-30.1 (a) (3)) evinces a legislative intent to do away with the possibility that a regulated entity might make campaign contributions in an effort to have influence with the elected official by whom it is regulated. The legislature also stated that the act in which the statute is found was passed

---

[5] Mr. Gwinn's actions in the case before us came under scrutiny only because he placed the ad on behalf of the insurer.

in furtherance of the State's responsibility "to protect the integrity of the democratic process and to ensure fair elections for constitutional offices. . . ." OCGA § 21-5-2.

If there is a conflict between different sections of the same statute, the court has the duty to reconcile the conflicting parts so as to make them consistent and harmonious with one another, and to give a sensible and intelligent effect to each part. *Houston v. Lowes of Savannah*, 235 Ga. 201, 203 (219 SE2d 115) (1975); *Williams v. Bear's Den*, 214 Ga. 240, 242 (104 SE2d 230) (1958). This task must be done without "reading out" any part of the statute as "mere surplusage," unless there is a clear reason for doing so. *Porter v. Food Giant*, 198 Ga. App. 736 (1) (402 SE2d 766) (1991).

The statutory definition of "contribution" consists of two sentences: the first sentence covers

> anything of value conveyed or transferred for the purpose of influencing the nomination . . . or election of an individual to the office of Commissioner of Insurance or encouraging the holder of such office to seek reelection.

The second sentence defines "contribution" as including

> the payment of a qualifying fee for and on behalf of a candidate for the office . . . and any other payment or purchase made for and on behalf of the holder of the office . . . or on behalf of a candidate for that office when such payment or purchase is made for the purpose of influencing the nomination . . . or election of the candidate and is made pursuant to the request or authority of the holder of such office, the candidate, the campaign committee of the candidate, or any other agent of the holder of such office or the candidate.

The first sentence prohibits the transfer or conveyance of *anything* of value to influence the election of a certain person as insurance commissioner, without limiting to whom or what the transfer or conveyance is prohibited. The second sentence forbids payments or purchases made on behalf of the commissioner or candidate to influence the election *when* that purchase or payment is made pursuant to the request or authority of the commissioner, candidate, campaign committee, or other agent. Thus, the first sentence covers a broad spectrum of conduct: a regulated entity may not transfer or convey *anything* of value to *anyone* in an effort to influence the election of a certain person as insurance commissioner. However, the second sentence immediately narrows the scope of the first sentence by prohibiting a regulated entity from making a payment or purchase to a third party on behalf of the candidate for something that will influence the

election *when* the candidate or someone acting for the candidate requests or authorizes the payment or purchase. The necessary corollary to the inclusion of the second sentence is that a payment or purchase made by a regulated entity to a third party on behalf of a candidate *but without* the request or authorization of the candidate is permissible. This, however, conflicts with the broad coverage contained in the first sentence. Recalling the perceived legislative intent and in order to give effect to both sentences of the definition and to harmonize them with one another without concluding that one is mere surplusage, I must construe the first sentence as prohibiting anything of value conveyed or transferred *to the commissioner, the candidate, or their campaign committees.*

The State Ethics Commission determined that Southern General's placement of the ad constituted a prohibited contribution in that it was "for the benefit of the campaign of Commissioner Evans. . . ." However, the phrase "for the benefit of" nowhere appears in the statutory definition of "contribution." Assuming that "for the benefit of" is synonymous with "on behalf of," a phrase that is contained within the second sentence of the statutory definition, Southern General's action would not constitute a violation because there is no evidence that Southern's ad was placed pursuant to the request or authority of the commissioner, his campaign committee, or any other agent. Southern General's act does not fall within the purview of my construction of the first sentence since the insurer did not transfer or convey anything of value to the commissioner or his campaign committee.

Since appellants' act of placing a newspaper ad urging the reelection of the insurance commissioner did not violate OCGA § 21-5-30.1 (b), I believe the State Ethics Commission erred when it concluded that appellants' act had violated OCGA § 21-5-30.1. Because appellants have never contested the finding that they were guilty of violating the statute, I concur with the majority's affirmance of the judgment of the superior court.

I am authorized to state that Justice Hunstein joins in this special concurrence.

DECIDED MARCH 15, 1993.

*Jenkins & Eels, Frank E. Jenkins III, Steven J. Misner,* for appellants.

*Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General, C. Theodore Lee,* for appellees.