**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**December 30, 2020**

# In the Court of Appeals of Georgia

A21A0081.  IN  RE  DECLARATION  OF  JUDICIAL
EMERGENCY.

BARNES, Presiding Judge.

The City of Augusta, its Mayor, and the Commissioners of Augusta-Richmond County (hereinafter "the appellants")[1] appeal from the order of Carl C. Brown, Jr., Chief Judge of the Richmond County Superior Court (hereinafter "Chief Judge"), captioned, "Designating 401 Walton Way & Craig-Houghton Elementary School as the Augusta-Richmond County Judicial Center John H. Ruffin, Jr. Courthouse Annexes for the Conduct of Judicial Business" (hereinafter, "the Order"). The appellants contend that the Order exceeds the scope of judicial emergency orders

---

[1] Individually, the appellants are Hardie Davis, Jr., Mayor, and William Fennoy, Dennis Williams, Mary Davis, Sammi Sias, Bobby Williams, Ben Hasan, Sean Frantom, Brandon Garrett, Marion Williams, John Clarke, Commissioners.

pursuant to OCGA § 38-3-61, that the Order impermissibly extends beyond the statutory 30-day duration of judicial emergency orders, and that the trial court committed reversible error by designating 401 Walton Way and Craig-Houghton Elementary School as courthouse annexes, ordering the renovation of 401 Walton Way and a property exchange with the Richmond County Board of Education for the Craig-Houghton Elementary School, appointing receivers to manage the renovation, and requiring that the renovation costs be paid out of the county registry. For the reasons explained below, we dismiss the appeal.

OCGA § 38-3-61 (a) provides in pertinent part that the Chief Justice of the Georgia Supreme Court and any other "authorized judicial official is authorized to declare the existence of a judicial emergency which shall be done by order either upon his or her own motion or upon motion by any interested person."[2] On March 14, 2020, in response to the COVID-19 pandemic, the Chief Justice entered an order declaring a statewide judicial emergency. The emergency order, among other things, suspended most court proceedings, including grand juries and jury trials. See OCGA

_____

[2] For purposes of the statute, an "[a]uthorized judicial official" is defined to include "[a] chief judge of a Georgia superior court judicial circuit." OCGA § 38-3-60 (1) (B).

2

§ 38-3-62.[3] Since the docketing of this appeal, the Chief Justice's emergency order had been extended nine times.[4]

On July 24, 2020, the Chief Judge entered the order at issue in this appeal. The Order first provided that "IT HAS BEEN DETERMINED that a Judicial Emergency exists in Richmond County, Georgia, affecting the courts such that there is a serious emergency affecting the court's ability to conduct jury trials and other business, pursuant to OCGA § 38-3-60 (2) (D)." (Capitalization in original.) The Order then acknowledged the Chief Justice's declaration of a statewide judicial emergency and incorporated the order and extensions declaring a statewide judicial emergency. The Order also included information supporting the need for additional space, including

---

[3] OCGA § 38-3-62 provides in part: "An authorized judicial official in an order declaring a judicial emergency, or in an order modifying or extending a judicial emergency order, is authorized to suspend, toll, extend, or otherwise grant relief from deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters[.]"

[4] The most recent extensions of the Chief Justice's emergency order provide for the resumption of jury trials, however the orders direct that the Chief Judge of each county convene a committee charged with developing a plan for safely resuming jury trials, and that the jury trials be conducted in accordance with that plan. See Supreme Court of Georgia, Sixth, Seventh, Eighth and Ninth Orders Extending Declaration of Statewide Judicial Emergency (September 10, 2020, October 10, 2020, November 9, 2020 and December 9, 2020).

information about the feasability of using 401 Walton Way and Craig-Houghton Elementary School as judicial annexes.

The Chief Judge then ordered that, pursuant to OCGA § 15-6-18 (a),[5] Building A of 401 Walton Way be "declared an Augusta-Richmond County Judicial Center John H. Ruffin, Jr. Courthouse Annex for the purposes of conducting jury trials and any other official Court business," and that "[t]he premises shall be rendered suitable for the conduct of Court business by the Mayor and Commissioners of Augusta-Richmond County in the following manner." The Chief Judge then provided instructions for the completion of the work, including contracting with an architect, conducting asbestos surveys, and obtaining work permits. The Chief Judge further instructed that the tasks be completed within 330 days.

Additionally, the Chief Judge ordered that, pursuant to OCGA § 15-6-18 (a), the Craig-Houghton Elementary School would also be declared a courthouse annex for the purposes of conducting jury trials and other official court business, and

_____

[5] OCGA § 15-6-18 (a) provides in part: "If for any cause it shall or may be impracticable to hold any session or sitting of any superior or state court at the courthouse or other place provided by law therefor, it shall be lawful to hold court and any session or sitting thereof at such place as the proper authorities of the county in and for which the court is to be held may from time to time provide for such purpose . . . ."

4

directed that the Mayor and County Commissioners render the premises suitable for the conduct of court business within 90 days.

The Chief Judge appointed receivers to manage the project "pursuant to OCGA § 9-8-3,"[6] and ordered that the funds necessary to effectuate the directives be paid "out of the county registry, pursuant to OCGA § 15-6-24," which, the Chief Judge asserted "requires payment of all contingent expenses incurred in holding any session of Court to be paid out of the county registry."[7] In a footnote following the citation to OCGA § 15-6-24, the Chief Judge noted: "Submitted as Certificate of Need. See *McCorkle v. Judges of Superior Court of Chatham County*, 260 Ga. 315, (1990)." The Chief Judge instructed that the Order would remain in effect until "such time as it is no longer impossible or impractical to conduct the business of the court without the

---

[6] OCGA § 9-8-3 provides: "Equity may appoint a receiver to take possession of and hold, subject to the direction of the court, any assets charged with the payment of debts where there is manifest danger of loss, destruction, or material injury to those interested. Under extraordinary circumstances, a receiver may be appointed before and without notice to the trustee or other person having charge of the assets. The terms on which a receiver is appointed shall be in the discretion of the court."

[7] OCGA § 15-6-24 (a) provides: "Any contingent expenses incurred in holding any session of the superior court, including lights, fuel, stationery, rent, publication of grand jury presentments when ordered published, and similar items, such as taking down testimony in felony cases, etc., shall be paid out of the county treasury of such county upon the certificate of the judge of the superior court and without further order."

benefit [of] 401 Walton Way and Craig-Houghton." "[A]ll parties and Receivers" were ordered to appear at a status hearing on September 16, 2020.[8]

The appellants filed a notice of appeal from the Order on July, 29, 2020, and on August 5, 2020, the case was docketed on an expedited basis in this Court pursuant to OCGA § 38-3-64.[9] The appeal was subsequently transferred to the

---

[8] According to the appellants, the status hearing has been rescheduled for December 15, 2020. They have filed a motion to stay the hearing, and the Chief Judge has filed a motion opposing the stay. Based on our determination that we lack jurisdiction over this appeal, we DENY the motion to stay.

[9] OCGA § 38-3-64 provides in pertinent part:

(a) Any person whose rights or interests are adversely affected by an order declaring the existence of a judicial emergency or any modification or extension of such order shall be entitled to appeal.

. . .

(c) The appeal shall be heard immediately by the Georgia Court of Appeals under the procedure of emergency motions. A party dissatisfied by the judgment of the Georgia Court of Appeals may appeal as a matter of right to the Georgia Supreme Court. Filing fees for these appeals shall be waived. All costs of court shall be borne by the state. Appeals shall be heard expeditiously.

Supreme Court on September 21, 2020, and later reinstated in this Court on November 9, 2020.[10]

In response to the appellants' contentions that the Order exceeds the scope of judicial emergency orders, the Chief Judge asserts that the inherent powers of the judiciary authorized his actions because, despite three years of discussion about appropriating the properties, the appellants had not yet provided the promised additional space for the juvenile court, and that additional space is needed to protect jurors and maintain the Governor's social distancing recommendations.

The Chief Judge further asserts that the appellants acted in bad faith by failing to complete the previously agreed upon exchange of the Craig Houghton Elementary

---

[10] An amended order was filed in the trial court on August 13, 2020, and is designated in the appellate record as "Record 2." The affidavit of contractor Hiram Thompson was filed in the trial court on August 17, 2020, and is included in the appellate record as "Record 3." However, in light of our dismissal of the appeal, we need not decide the propriety of these filings. See *Harp v. State*, 204 Ga. App. 527, 527 (1) (420 SE2d 6) (1992) ("evidence never actually admitted at trial cannot properly become a part of the record on appeal pursuant to OCGA § 5-6-41 (f)") (citation omitted); *Davis v. Harpagon Co.*, 281 Ga. 250, 253 (8) (637 SE2d 1) (2006) (In civil actions, as a general rule, upon the filing of a notice of appeal a trial court loses jurisdiction to modify or enforce a judgment which is the subject of the appeal during the period of supersedeas and deprives the trial court of jurisdiction to take action in the case that would affect the judgment on appeal); OCGA § 5-6-46 (holding generally that in civil cases a trial court, upon the filing of a notice of appeal, loses jurisdiction to modify a judgment that is the subject of the appeal during the pendency of the supersedeas).

School for county property next to a high school. According to the Chief Judge, he is authorized to require that the exchange be completed because the property was needed to "comply with the law relating to children in need of services."

The Chief Judge also maintains that he was authorized to use his inherent judicial power to require the renovation of the 401 Walton Way building because the appellants were doing "nothing to provide a juvenile court facility as they at one time promised," and that the juvenile problems were "fester[ing]" and could not be addressed without the additional space. He asserts authority pursuant to OCGA § 9-8-1[11] to appoint receivers to manage the properties, and contends that the inherent powers of the judiciary also authorized the payment of the renovations from the county registry.

An amici curiae brief was filed by 33 "members of the Georgia Bar [who] regularly practic[e] in the Augusta Judicial Circuit." The amici curiae assert, among other things, that the appeal should be dismissed because the facts and arguments should be fully developed and resolved below before appellate review, the case is not

---

[11] "When any fund or property is in litigation and the rights of either or both parties cannot otherwise be fully protected or when there is a fund or property having no one to manage it, a receiver of the same may be appointed by the judge of the superior court having jurisdiction thereof." OCGA § 9-8-1.

ripe for review, and the appellants are seeking an advisory opinion from this Court. They also assert that under OCGA § 38-3-64 (a), the appellant must be a "'person' whose rights or interests are adversely affected" by a judicial emergency order, and the City of Augusta is not a person, nor has it been adversely affected by the appellee's order, as it has taken no action to comply with the Order and has not suffered any adverse consequences from the Order.

In addition, they maintain that the Chief Judge's order is not an emergency order issued under OCGA §§ 38-3-60 and 38-3-61, as the Order was "submitted as a certificate of need" pursuant to OCGA § 15-6-24, and the appellants have not followed the procedure for a county to challenge an order requiring expenditure of county funds pursuant to that statute, including filing a protest or objection to the certificate of need in the superior court. This Court lacks jurisdiction for the following reasons.

1. Accepting without deciding that this appeal falls under OCGA §§ 38-3-60 and 38-3-61, we note that procedurally, such emergency appeals are heard expeditiously. See OCGA § 38-3-64 (c). However, OCGA § 38-3-64 is not the only authority governing this Court's jurisdiction over this appeal, and the statute must be construed in connection and in harmony with the fundamental rules governing

9

appellate jurisdiction in Georgia, including the scope of this Court's jurisdiction under Ga. Const. of 1983, Art. VI, Sec. V, Par. III. See *Wilson v. Miles*, 218 Ga. App. 806, 808 (2) (463 SE2d 381) (1995) ("It is well settled in this jurisdiction that all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it; that they are to be construed in connection and in harmony with the existing law; and that their meaning and effect will be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and the decisions of the courts.") (citation and punctuation omitted).

This Court's jurisdiction is granted by Ga. Const. of 1983, Art. VI, Sec. V, Par. III, which states that this Court

> shall be a court of review and shall exercise appellate and certiorari jurisdiction in all cases not reserved to the Supreme Court or conferred on other courts by law. The decisions of [this Court] insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents.

An appeal which does not fall within this Court's jurisdiction must be dismissed for lack of jurisdiction. *Standridge v. Spillers*, 263 Ga. App. 401, 403 (1) (587 SE2d 862) (2003). Because the Georgia Constitution describes "the nature and function of this

10

Court as being 'a court of review,'" this Court "is a court for the correction of errors

of law made by the trial courts." See *General Motors Corp. v. Blake*, 237 Ga. App.

426, 427 (1) & n. 1 (515 SE2d 166) (1999).

> [The Supreme] Court and the Court of Appeals are courts of review.
> 1983 Ga. Const., Art. VI, Sec. V, Par. III; Art. VI, Sec. VI, Par. II. As
> appellate courts, we are courts for the correction of errors of law made
> by the trial courts. In appellate practice, an error of law is a false or
> mistaken conception or application of the law. . . . An error of law has
> as its basis a specific ruling made by the trial court.

(Citations and punctuation omitted.) *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1)

(1999). And because "this Court is a court for the correction of errors[,] . . . it does

not consider matters which were not raised and ruled on by the trial court." *Mordica*

*v. State*, 319 Ga. App. 149, 154-155 (2) (736 SE2d 153) (2012) (punctuation and

footnote omitted); see also *Williams v. State*, 277 Ga. App. 106, 108 (2) (625 SE2d

509) (2005) ("We are a court for the correction of errors of law committed by the trial

court where proper exception is taken, and we will not consider issues and grounds

for objection . . . which were not raised and determined in the trial court.").

The issues the appellants attempt to raise on appeal were not raised or ruled on

in the first instance in the trial court. Without a ruling by the trial court on a particular

11

issue, there is nothing for this Court to review upon appeal. See *Mordica*, 319 Ga. App. at 155 (2). See also *Stephens v. Alan v. Mock Constr. Co.*, 302 Ga. App. 280, 287 (2) (690 SE2d 225) (2010) ("[The appellants] cannot seek remedial action in the first instance at the appellate level.").

Moreover, presently, there is no controversy appropriate for judicial determination. "The existence of an actual controversy is fundamental to a decision on the merits by this court." *Bowers v. Bd. of Regents*, 259 Ga. 221, 221-222 (378 SE2d 460) (1989) (per curium). Though the Order contains certain directives, the parties have not undertaken any steps to meet those requirements, other than the Chief Judge ordering a status hearing. The appellants "ask this court to do what it is not authorized to do: to render an advisory opinion on hypothetical and legal questions that have not arisen but which appellants fear may arise at a future date." *Cheeks v. Miller*, 262 Ga. 687, 689 (425 SE2d 278) (1993).

2. Similarly, we lack jurisdiction if the Chief Judge's order can instead be construed as a certificate of need rather than an emergency order. Our Georgia Supreme Court has previously found that "certificates are not a judgment in a case," and thus are not directly appealable. *McCorkle*, 260 Ga. at 317.

*Appeal dismissed. Markle, J., concurs. Gobeil, J., concurs fully in Division 2 and specially in Division 1.*

A21A0081.   IN   RE   DECLARATION   OF   JUDICIAL
          EMERGENCY.

GOBEIL, Judge, concurring fully in part and specially in part.

I concur fully to Division 2 and specially to Division 1. The issues underlying this appeal raise important questions about the limits of judicial power. But, we cannot reach those questions without jurisdiction. Whether the underlying order is an emergency order, a certificate of need, or some hybrid (as it appears to contain elements of each), I agree with the Majority's conclusion that we lack jurisdiction because the appellants are raising issues on appeal that were not raised or ruled upon in the first instance by the trial court.