A94A1293. DOE v. BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA.
(452 SE2d 776)

BEASLEY, Presiding Judge.

The plaintiff, using the pseudonym Jane Doe, filed a complaint against the Board of Regents of the University System of Georgia seeking a temporary restraining order and preliminary and permanent injunctive relief against disclosure. A request had been made to the University of Georgia by the campus newspaper, "The Red & Black," under the Open Records Act, OCGA § 50-18-70 et seq. The newspaper sought release of the University police report of an incident related by plaintiff, a university employee, in which she claimed that she had been abducted and raped on the university campus by an unknown assailant. The superior court declined to issue an interlocutory injunction and plaintiff filed a direct appeal, as permitted by OCGA § 5-6-34 (a) (4).[1]

According to plaintiff's affidavit, she called a friend from a pay phone on October 4, 1993, and told her that she had been raped. The friend met plaintiff and drove her to the home of two other friends who were police officers with the Athens-Clarke County Police Department. Plaintiff related that she had been abducted by a man whom she did not know and raped in his van in a parking lot behind a particular building on the university campus. One of the officers reported the rape to the university police, who took action.

Plaintiff was examined at the emergency room of a local hospital and gave the same account to an on-duty university police officer. She continued to relate this account for three days to various university police officers investigating the crime. On October 7, she recanted this version of her experience. She explained in her affidavit that she was

---

[1] Plaintiff originally filed this appeal, which is solely from the denial of injunctive relief, in the Supreme Court. See 1983 Ga. Const., Art. VI, Sec. VI, Par. III (2). The Supreme Court, by vote of 6 to 1, transferred the case to the Court of Appeals.

in fact forced to have sexual intercourse against her will in the apartment of a man whom she knew and with whom she had been involved in a relationship for a short time. She further related that immediately thereafter she left and drove around very upset, distraught, and in a state of emotional turmoil, and that her mental state caused her to fabricate the version she first told the police. According to plaintiff's affidavit, she declined to pursue criminal prosecution of the alleged rapist, and there is no mention in the record of any report to the Athens-Clarke County Police Department by anyone.

On October 13, the editor-in-chief of "The Red & Black" sent a letter to the chief of the university police requesting "the incident report filed by the university employee, with the name included, who falsely claimed she was raped on October 4 at the parking lot behind the Hoke Smith building." He stated that the case was "of special interest to the university community, since it perpetuated the specter of rape on our campus."

The university's Office of Legal Affairs contacted plaintiff, indicating that it intended to release the requested information. Plaintiff brought suit to prevent this action.

In the suit she contends that the disclosure of the information would cause her physical safety to be seriously threatened and endangered and her reputation to be harmed, and that she would be subjected to unnecessary embarrassment, harassment, and humiliation. She asserted a right of privacy under OCGA § 50-18-72 (a) (2) and protection from disclosure under OCGA § 16-6-23.

The superior court issued a temporary restraining order, pending the hearing on plaintiff's request for an interlocutory injunction. It enjoined the university from disclosing to "The Red & Black" or to others plaintiff's name or any details of the incident which might tend to identify her. Following a hearing, the court declined to issue the interlocutory injunction. It concluded that OCGA § 16-6-23 did not protect an undisputed false claim of rape as made by the plaintiff; that even if it did, disclosure outweighed nondisclosure; that the statute more appropriately related to the news media than to the defendant; that the report sought was a public record under OCGA § 50-18-70; that as a wrongdoer plaintiff had no legitimate expectation of privacy in the report, so that the report was not exempted from disclosure by OCGA § 50-18-72 (a) (2); and that the evidence was insufficient "to show any real danger to plaintiff's life or safety or untoward harm."

In order to maintain the status of the matter for appellate review, the court issued an injunction applicable during the pendency of the appeal pursuant to OCGA § 9-11-62 (c), enjoining disclosure by the defendant of the university police department's investigative file. On its own motion, the court also directed that any list or information of

possible suspects in the investigative files maintained by the university police department relating to the incident not be disclosed, so as to protect the personal privacy of any such individuals from unwarranted public attention and exposure.

Plaintiff enumerates as error most of the court's conclusions and the finding that the report involved a false claim of rape.

1. We begin with the Open Records Act, which is the authority underlying the student newspaper's request. OCGA § 50-18-70 (b) states: "All [state, county, and municipal records], except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to inspection by the general public, shall be open for a personal inspection by any citizen of this state at a reasonable time and place; and those in charge of such records shall not refuse this privilege to any citizen."

In *Napper v. Ga. Pub. Television Co.*, 257 Ga. 156, 160 (356 SE2d 640) (1987), the Supreme Court pointed the way to proper analysis: "Where there is a request for disclosure of documents under the [Open] Records Act, the first inquiry is whether the records are 'public records.'" "Public Records" are defined as "documents, papers, letters, maps, books, tapes, photographs, computer based or generated information, or similar material prepared and maintained or received in the course of the operation of a public office or agency." OCGA § 50-18-70 (a).

"If they are public records, the second inquiry is whether they are protected from public disclosure pursuant to §§ 50-18-70 or 50-18-72. [Cit.] If they are not exempt under the list of exemptions found in § 50-18-72 or under any other statute, then the question is whether they should be protected by court order under § 50-18-70, [cit.], but only if there is a claim that disclosure of the public records would invade individual privacy[.] *Bd. of Regents v. Atlanta Journal & Const.*, 259 Ga. 214, 216-218 (4) (378 SE2d 305) (1989); *Ga. Hosp. Assn. v. Ledbetter*, 260 Ga. 477, 479 (5) (396 SE2d 488) (1990)." *Hardaway Co. v. Rives*, 262 Ga. 631, 632 (1) (422 SE2d 854) (1992).

The Board of Regents is subject to the Act and there is no dispute that the incident reports in question are public records. See *Bd. of Regents*, supra at 214 (1). What particularly sweeps the reports sought here into the statute is OCGA § 50-18-72 (a) (4), which provides an exemption for records of law enforcement agencies in any pending investigation "other than initial police arrest reports, accident reports, and incident reports; provided, however, that an investigation or prosecution shall no longer be deemed to be pending when all direct litigation involving said investigation and prosecution has become final or otherwise terminated." Even if the requested information were not an "incident report" excepted from the exemption, it clearly involves a matter which has been terminated. In either event,

it would be obtainable under this section, unless a bar exists elsewhere.

2. There is no other exemption listed in OCGA § 50-18-72 which would block the information from disclosure. Plaintiff relies on subsection (a) (2), which protects "[m]edical or veterinary records and similar files, the disclosure of which would be an invasion of personal privacy." She argues that this is a "similar file" as contemplated in that subsection, but that general category clearly does not cover the report here because such documents are expressly governed by subsection (a) (4).

There is another reason that subsection (a) (2) does not aid plaintiff. It is true that it, "[p]roperly construed . . . forbids disclosure to the general public from [public] records or files of *any* information which would invade the constitutional, statutory or common law rights . . . to privacy. [Cit.]" *Doe v. Sears*, 245 Ga. 83, 86 (263 SE2d 119) (1980). But "[t]he right of privacy, protectable in tort, . . . extends only to unnecessary public scrutiny." *Athens Observer v. Anderson*, 245 Ga. 63, 65 (263 SE2d 128) (1980). Quoting from earlier cases, the Supreme Court described this as matters " 'with which the public has no legitimate concern.' " (Emphasis omitted.) Id. at 65, n. 3. It also referred to the principle articulated in *Waters v. Fleetwood*, 212 Ga. 161, 167 (91 SE2d 344) (1956): " '(W)here an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy.' " Id. at 66, n. 4. A report of a crime, whether the report is true or false, is such a public matter. In the words quoted in *Harris v. Cox Enterprises*, 256 Ga. 299, 302 (348 SE2d 448) (1986), the incident report concerning the plaintiff's report is a subject of " 'legitimate public inquiry.' "

Thus, plaintiff is not helped by OCGA § 50-18-72 (a) (2)'s "similar files" exemption.

3. Plaintiff contends that if the whole report is not exempt from the Open Records Act exemptions, then at least her name must be withheld by virtue of another statute. The Open Records law does recognize that prohibition or exemptions may be found in other areas of the Code. OCGA § 50-18-70 (b); *Hardaway Co.*, supra at 632. In this instance the plaintiff relies on OCGA § 16-6-23, the rape victim confidentiality statute.[2]

---

[2] Both plaintiff's brief and the trial court's order refer to this Code section as the Georgia Rape Shield Statute. What is known as the Georgia Rape Shield Statute refers to rules of evidence in rape trials (OCGA § 24-2-3); it is not the statute in question here, which clothes with confidentiality the names and identity of the victim to a certain extent. See *Macon Telegraph Pub. Co. v. Tatum*, 263 Ga. 678, n. 1 (436 SE2d 655) (1993); OCGA § 16-6-23 (a) & (b).

OCGA § 16-6-23 (a) provides: "It shall be unlawful for any news media or any other person to print and publish, broadcast, televise, or disseminate through any other medium of public dissemination or cause to be printed in any newspaper, magazine, periodical or other publication published in this state or through any radio or television broadcast originating in the state the name or identity of any female who may have been raped or upon whom an assault with intent to commit the offense of rape may have been made."

In relation to the Open Records Act, the Supreme Court has held that although the list of exemptions specified in OCGA § 50-18-72 is not exhaustive, "any purported statutory exemption from disclosure under the Open Records Act must be narrowly construed." *Hardaway Co.*, supra at 634 (2) (a). That is, the law favors disclosure. Moreover, the legislative prohibition against disclosure of name or identity of a rape victim is a penal statute, and it is a "firmly established legal principle[ ]" that "criminal statutes must be strictly construed against the state." *Bankston v. State*, 258 Ga. 188, 190 (367 SE2d 36) (1988).

With this in mind, we review the confidentiality statute. First, it is very limited. It protects only name and identity of a victim of rape or sexual assault with intent to rape, and it does so only up to the point where the name or identity appears in an open court record. See OCGA § 16-6-23 (b); *Cox Broadcasting Corp. v. Cohn*, 420 U. S. 469 (95 SC 1029, 43 LE2d 328) (1975). Second, the State has a legitimate interest "in protecting the privacy of a sexual assault victim." *Macon Telegraph Publishing Co. v. Tatum*, supra at 679 (2). In so doing, it encourages the reporting of rape and other sexual assaults, so that they may be investigated and the perpetrators prosecuted. Third, the statute is not to be rendered meaningless but must be construed so as to achieve the humane and crime-reporting purposes which prompted its passage.

If there is a stalemate between the Open Records Act and the confidentiality statute, it must be resolved in favor of providing the shield rather than the sword. First, the exception is an express and limited one as compared to a general law. "For purposes of interpretation, and to the extent of any repugnancy between them, the specific statute will prevail over the general statute, absent any indication of a contrary legislative intent." *First Nat. Bank v. Sinkler*, 170 Ga. App. 668, 670 (1) (317 SE2d 897) (1984). Second, as stated in *Fulton County v. Corp. &c. of Latter Day Saints*, 133 Ga. App. 847, 851 (212 SE2d 451) (1975): "When the courts are called upon to determine if there is a conflict between statutes they are required to undertake to construe them together and seek to give full effect to both laws as representing all of the legislative intention. [Cit.]" Third, the sword would have potentially devastating personal consequences on the person and perhaps others as well. Weighing the interest of the

public to know the real identity against the interest of the victim to remain anonymous so as to normalize her life insofar as possible, the balance has been struck in her favor as a matter of public policy by the legislature.

We find no reason to conclude that this law is not one of the laws by which the General Assembly intended to create a specific and discrete exemption from the Open Records Act.

The question remains whether it governs the proposed action of defendant, the Board of Regents.

The prohibition is not limited to the news media but expressly encompasses "any other person" as well. OCGA § 16-6-23 (a). "Person" includes a government agency. OCGA § 16-1-3 (12). The defendant Board of Regents is subject to it, as it is an agent of the state government. *Board of Regents*, supra at 214 (1). Divulging plaintiff's name to the newspaper, which avowedly seeks it so as to publish it along with the story which the newspaper describes as "of special interest to the University community," would constitute dissemination as contemplated by the statute. Were it otherwise, the newspaper could obtain the name from this source and be insulated from prosecution for printing and publishing it. The reason is that " '(I)f a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order.' " *Florida Star v. B. J. F.*, 491 U. S. 524, 533 (109 SC 2603, 105 LE2d 443) (1989). This is a First Amendment-based rule broader than the source excepted in OCGA § 16-6-23 (b), i.e., "public court documents open to public inspection." See also *Tucker v. News Pub. Co.*, 197 Ga. App. 85, 86 (397 SE2d 499) (1990).

Plaintiff's experience did not reach that stage; no case was ever made, so the incident never became part of the public domain in a judicial proceeding. The statute excepts from the prohibition only that which is "disclosed in public court documents open to public inspection." OCGA § 16-6-23 (b). This is constitutionally required. *Cox Broadcasting Corp. v. Cohn*, supra at 496. There being only this exception, we conclude that the legislature intended not to except from the prohibition other records such as the one here at issue. "[I]f some things (of many) are expressly mentioned, the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned. [Cit.]" *Roman v. Terrell*, 195 Ga. App. 219, 221 (393 SE2d 83) (1990). The United States Supreme Court in the *Cox* case expressly limited its decision to "public court documents open to public inspection," indicating that preclusion of access to other kinds of "official records" was left open. *Cox Broadcasting Corp.*, supra at 496, n. 26.

The trial court concluded that the statute did not shield the

plaintiff because by its own terms it did not apply to a false allegation of rape. However, plaintiff's claim that she was in fact raped is uncontroverted, and that is an inextricable part of the report. The initial misrepresentation of the circumstances of her attack does not alter this core assertion, which we must take as true for the purposes of the confidentiality statute. OCGA § 16-6-23 does not require the matter to have been established as true in order for the identity of the victim to be protected; it covers the identity of those who "may have been" victims. Indeed, its attempt to encourage reporting of rape by protecting the identity of the victim at the initial stages would be ineffective if the protection was not offered until the rapist was adjudged guilty. By then the victim's name has long been in a judicial record, open for all to see.

The humane purpose of the law cannot be achieved if it fails to protect the rape victim who, for the very reason of her utter despair in which the crying need for help battled with the fears and envisioned consequences of accusing the person she knew, varied the details of the rape in a futile effort to resolve the conflicting influences. If the statute fails to protect the weak, it fails in its highest calling; the strong, who perhaps have other means of support in handling such a traumatic event, need it not so much.

By invoking this statute, plaintiff does not seek to cover up her untruth. Instead, she apologizes for it, in her affidavit. She is entitled to anonymity under the circumstances of this case, a statutorily-provided compensation which is small insofar as public interest in her identity is concerned but large insofar as her life is concerned.

This is not to say that citizens can, with no dire consequences, make false reports of crime. The law deals severely with such. OCGA § 16-10-20. There is no evidence of any prosecution against plaintiff for making the report in the manner which she did.

In order to effectuate the purpose of the statute, plaintiff is entitled to an injunction. To deny it would countenance the commission of what the legislature has prohibited or, at the very least, because of the court imprimatur, insulate the disclosing Board of Regents and the publishing newspaper from criminal prosecution.

4. The last question raised is whether there should be protection under court order pursuant to OCGA § 50-18-70 (b). This need not be addressed, because the protection is afforded by statute. We note, however, that when left to the judicial branch, it is a matter of the trial court's discretion. *Houston v. Rutledge*, 237 Ga. 764, 766 (229 SE2d 624) (1976). As directed in that case, the trial court is to "balance the public interest in favor of disclosure against the public interest in favor of non-disclosure." Id. This was reiterated as the proper approach in *Napper v. Ga. Pub. Television Co.*, supra at 161. The trial court in the instant case recognized the public interest in access

to governmental information, in particular in connection with assuring fair and impartial law enforcement investigation, and the public's interest in discouraging false claims by revealing them. No showing has been made of a need to override the statutory prohibition. Certainly the Board of Regents or its Office of Legal Affairs or its University of Georgia Police Department have no need to disseminate it; they have not even indicated a desire to do so but merely are responding to the newspaper's request and seeking to abide by the Open Records Act "unless . . . instructed otherwise by Court Order." The newspaper is not a party to this action, so its position is presented only in the letter of request.

The public's interest in these matters is not disserved by withholding only plaintiff's name and identity. The newspaper now has much of the account in the plaintiff's own sworn words, as revealed in her affidavit filed in the trial court. There may be more in the police incident report, which is subject to disclosure. But the General Assembly has already weighed the competing public interests of encouraging the reporting of rape and sexual assault against the interests identified by the court, and it has established the public policy to be the very limited protection provided by Section 16-6-23.[3] Thus the court has no discretion to exercise in this case and cannot override the legislative mandate.

This differs from *Houston,* supra at 765, a case in which the balance between competing public interests was left to the judicial branch to resolve. It also differs from *Macon Telegraph Pub. Co.,* supra. In that case the newspaper had legally obtained truthful information about a matter of public interest which included a sexual assault. The investigating officers gave the name to reporters, with an admonition not to publish, but the newspaper published anyway. The court held that the victim's privacy right as to the assault was lost when she committed a homicide in connection with it. Here the defendant has not divulged the name, and the interest in publishing the victim's name as one who initially gave a fictitious version of her degrading experience, regarding which no public prosecution has occurred, is not of such a grade that disclosure is authorized. The Supreme Court pointed out in *Macon Telegraph* that "[r]esolving the conflicting state interests depends on the specific facts in each case." Id. at 679.

In sum, pursuant to the Open Records Act, the newspaper is entitled to the requested incident reports but with plaintiff's name and identifying information redacted. "[E]ven when documents are found

---

[3] As noted earlier, in *Cox Broadcasting Corp.,* supra at 496, the United States Supreme Court left open the question of state political institutions establishing avoidances of exposure of private information.

to be public records, and therefore open for inspection by the public, there may be some material contained therein which for competing public policy reasons are not subject to disclosure." *Harris v. Cox Enterprises*, supra at 300. This is one of those instances.

The denial of plaintiff's petition for interlocutory injunction is reversed to the extent that it permits disclosure of her name or identity. The Open Records Act requires defendant "to preserve the confidentiality of information that the public does not have a right to see." *Griffin-Spalding &c. Auth. v. Radio Station WKEU*, 240 Ga. 444, 447 (3) (241 SE2d 196) (1978). In this instance, and in these circumstances, that information is plaintiff's name and identity.

*Judgment affirmed in part and reversed in part and case remanded with direction. Pope, C. J., McMurray, P. J., Johnson and Smith, JJ., concur. Birdsong, P. J., Andrews, Blackburn and Ruffin, JJ., concur in part and dissent in part.*

ANDREWS, Judge, concurring in part and dissenting in part.

As addressed in Division 3 of the majority opinion, I concur with the majority's conclusion that the newspaper is entitled to the requested information. I do not agree with the majority's conclusion that the plaintiff's name and identifying information should be redacted from such report. Accordingly, the decision of the superior court to deny the interlocutory injunction should be affirmed.

In the instant case, the name or identity of the victim is not protected by OCGA § 16-6-23 (a). The reason is that the statute does not cover an admittedly false allegation of rape. It is undisputed that the incident investigated by the campus police did not occur. Plaintiff's affidavit makes this certain. The fact that she may have been subjected to the devastating degradation of rape by someone else at a different place and under different circumstances, and that her eventual allegation of this is included in the report of the fictitious incident, does not prevent the university from releasing the report, with her name.

The protection of OCGA § 16-6-23, which is meant to encourage the reporting of rape, was destroyed when its falsity was revealed. The asserted true account, which explained the reason for the false account, was inextricably tied to it. By reporting to university authorities a false story of abduction and sexual assault on the university campus, a possible criminal violation under OCGA § 16-10-20, plaintiff lost the right to keep her name private.

In *Macon Telegraph Pub. Co. v. Tatum*, 263 Ga. 678 (436 SE2d 655) (1993), our Supreme Court determined that Tatum, who defended herself against a sexual attack by shooting and killing an intruder in her home, could not recover damages against the newspaper for an invasion of privacy based on its publication of her name in

connection with the sexual assault. The court reasoned that the case involved more than the reporting of Tatum's name solely because she was a victim of a sexual assault. Accordingly, the court determined that when Tatum shot the intruder she became the object of a legitimate public interest and that the newspaper had the right to accurately report the facts regarding the incident, including her name.

In the instant case there is an even stronger public interest in disclosing the information than in *Macon Telegraph*. Here, there is a clear interest in alerting the public to the fact that plaintiff's original rape report was fabricated. This public interest combined with the fact that plaintiff lost the right to keep her name private compels disclosure.

With regard to Division 4, for the reasons stated above, I respectfully dissent from those portions which conclude that the victim's name should be redacted.

I am authorized to state that Presiding Judge Birdsong, Judge Blackburn and Judge Ruffin join in this dissent.

BLACKBURN, Judge, concurring in part and dissenting in part.

I concur with Judge Andrews' dissent. The majority opinion treats the appellant's first undisputedly false fabrication as being separate from her later story which it contends must be accepted as true. There was only a single incident (at most) and appellant falsely represented the facts thereof for *three days* to various police officers. This is inconsistent with the notion that her falsehoods resulted from a temporary mental state resulting from the trauma of the moment. Indeed, there is no medical evidence or expert testimony in the record to support the assumptions of the majority concerning appellant's mental and physical state or the fact of a rape. It is not unreasonable to infer that one who has been caught in a falsehood falls back onto another fabrication when the original falsehood is exposed. This is true whether the original concoction results from a confused mental state, mental instability, or from being a person with an inappropriate original motive. Where the individual then refuses to name the rapist or to prosecute same, serious doubts are cast as to whether or not any rape ever occurred.

While being the victim of rape is a terribly degrading and traumatic experience, which the legislature has sought to soften by minimizing the victim's public exposure, it could not possibly have been intended that one who commits a crime (by falsely reporting a crime) be insulated from public exposure because the incident falsely reported was rape. The intention was obviously to protect rape victims, not criminal perpetrators.

The very protections which the legislature has set up for rape victims results in a reduction of the protections insured by a free

press and the public's right to know. It is easy to imagine how the protections appellant seeks could be misused and result in great public harm. What if, for example, the report had been that the appellant had been abducted by a black male? What if, instead of a single report, there were numerous reports? What if such reports were part of an intentional scheme to injure blacks? Would the press and public be barred from investigating and exposing such a scheme?

What if the appellant had named an individual in her original fabrication? Then the falsely accused rapist's name would be fully disclosed while the false accuser would be protected from disclosure. Under the majority's holding the perpetrator would be considered the "victim," and be protected, while the true victim would become the "defendant" whose identity would be disclosed. While such a potential exists in every rape case, where, as here, there is an undisputed false accusation, there can be no basis for nondisclosure of a criminal perpetrator's name.

I join Judge Andrews in concluding that appellant has lost any right she would otherwise have had to keep her identity from being disclosed because of her admitted fabrications and the superior right of the public to know of the falsity of her original complaint, and the right to know *who* falsely complained.

I am authorized to state that Presiding Judge Birdsong joins in this dissent.

DECIDED DECEMBER 1, 1994 —
RECONSIDERATION DENIED DECEMBER 19, 1994.

*McArthur & McArthur, John J. McArthur, Jeffrey A. Rothman,* for appellant.

*Michael J. Bowers, Attorney General, Dennis R. Dunn, Senior Assistant Attorney General, Rebecca S. Mick, Assistant Attorney General,* for appellee.