**MARYLAND RIGHT TO LIFE STATE POLITICAL ACTION COMMITTEE, et al.,**

v.

**Frank WEATHERSBEE, et al.**

**Civ. No. Y–97–565.**

United States District Court, D. Maryland.

Aug. 20, 1997.

James Bopp, Jr., Terre Haute, Indiana; Dale L. Wilcox, Terre Haute, Indiana; Ben Dennis, Rockville, Maryland, counsel for Plaintiffs.

J. Joseph Curran, Jr., Attorney General, Baltimore, Maryland; Lawrence P. Fletcher–Hill, Assistant Attorney General, Baltimore, Maryland; Margaret Witherup Tindall, Staff Attorney, Baltimore, Maryland; Robert Z. Zarnoch, Assistant Attorney General, Annapolis, Maryland, counsel for Defendants.

### MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

This civil action challenges a Maryland public ethics law[1] that limits the involvement of certain regulated lobbyists in the affairs of certain political committees as impinging on protected political speech and association in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs seek a declaratory judgment that the challenged statute is unconstitutional and an injunction prohibiting its enforcement.

### I. *Facts*

Plaintiffs are Maryland Right to Life State Political Action Committee ("MRLSPAC"), a registered state political committee established by Maryland Right to Life, Inc. ("MRL") under the laws of the State of Maryland; David Lam ("Lam"), associate executive director of MRL and a registered lobbyist for MRL who would like to be an officer or treasurer of MRLSPAC; and Cathy Hammer ("Hammer"), administrative assistant with MRL who intends to register as a lobbyist and who also would like to be an officer or treasurer of MRLSPAC.

Defendants are Frank Weathersbee in his official capacity as State's Attorney for Anne Arundel County,[2] Michael L. May in his official capacity as chairman and member of State Ethics Commission, Mark C. Medairy, Jr., in his official capacity as a member of the State Ethics Commission, Charles O. Monk, II, in his official capacity as a member of the State Ethics Commission, Robert J. Romadka in his official capacity as a member of the State Ethics Commission, and April E. Sapulveda in her official capacity as a member of the State Ethics Commission.

Plaintiffs filed a Complaint seeking a declaratory judgment that the Section 15–707 of the State Government Article is unconstitutional. Plaintiffs also sought both a preliminary and a permanent injunction prohibiting enforcement of the challenged statute. Because the 1997 session of the Maryland General Assembly is completed and the 1998 session does not begin until January 1998, Plaintiffs' Motion for a Preliminary Injunction is moot. The parties also filed cross Motions for Summary Judgment. In addition, Plaintiffs filed a Motion to Strike Certain Exhibits in Support of Defendants' Motion for Summary Judgment. The motions have been fully briefed, and a hearing has been held.

### II. *Standing and Ripeness*

As an initial matter, the Court must determine whether the pending action is justiciable. The relevant areas for judicial inquiry are standing and ripeness. Standing addresses whether a plaintiff has an adequate interest to be entitled to a judicial determination; ripeness is concerned with determining if a dispute is sufficiently mature to require a judicial determination and in particular whether an injury that has not taken place is likely to occur. 13, 13A Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE §§ 3531, 3532 (1984).

---

1. Plaintiffs, in their initial pleadings, cite the challenged statute as Section 15–707 of Article 33 of the Maryland Annotated Code. The challenged statute is codified in the State Government Article and cited as: MD.CODE ANN., STATE GOV'T § 15–707 (1995).

2. Defendants indicate that although enforcement of Section 15–707 is technically within the jurisdiction of the State's Attorney for Anne Arundel County, he is unlikely to pursue criminal enforce-

ment actions. Instead, enforcement is more likely to be pursued by either the State Prosecutor, who has specific authority for prosecuting criminal offenses under Maryland's public ethics laws, MD.ANN.CODE art. 10, § 33B(b)(2), or the Maryland Attorney General, who is generally authorized to prosecute such offenses, MD. CONST. art. V, § 3(a)(2). (Defs.' Mem. in Supp. of Mot. for Summ.J. at 8 n. 9).

### A. *Standing*

■ The doctrine of standing developed from a blending of the "case or controversy" requirement of Article III of the Constitution and concerns of judicial self-restraint. To satisfy the standing requirement, a plaintiff must show a distinct and palpable injury, a causal connection between the injury and the challenged activity, and the redressability of the injury by a remedy the court is prepared to give. 13 Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE § 3531.3.

Of particular relevance to the pending action is the decision of the Supreme Court in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), in which candidates for federal elective office sued to enjoin the enforcement of provisions of federal election law limiting campaign spending as unconstitutional. While noting that the interests of the plaintiffs were prospective, the Supreme Court concluded that the interests of at least some of the plaintiffs were sufficient to present "a real and substantial controversy admitting of specific relief ... as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 12, 96 S.Ct. at 631 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)).

### 1. *Lam*

■ Plaintiff Lam is currently a regulated lobbyist for MRL. He filed a Lobbying Registration Form with the State Ethics Commission in December 1996 for his activities on behalf of MRL as required under Section 15–703 of the State Government Article of the Annotated Code of Maryland. MD.CODE ANN., STATE GOV'T § 15–703 (1995). In addition, he has indicated that he would like to serve as an officer or treasurer of MRLSPAC.

Lam is not required to violate state law to challenge it as violative of the Constitution, he need only face "a credible threat of prosecution." *International Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809, 819 (5th Cir.1979). As a regulated lobbyist, Lam would be in violation of Section 15–707 and subject to civil and criminal penalties if he were to assume the position of officer or treasurer of MRLSPAC. Accordingly, the Court finds that he has standing to challenge the constitutionality of Section 15–707.

### 2. *Hammer*

The issue of standing as it relates to Defendant Hammer is more tenuous. She works as an administrative assistant with MRL. At present, she is neither a regulated lobbyist for MRL nor is she an officer or treasurer of MRLSPAC. She does, however, indicate that she wishes to hold both positions simultaneously and is prevented from doing so by Section 15–707. While the Court has concerns about Hammer's standing, it need not address its concerns in detail because, as discussed above, Plaintiff Lam has standing.

### 3. *MRLSPAC*

■■ The issue of standing as it relates to MRLSPAC raises the specter of organizational standing. In *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), the Supreme Court held that an organization does not have standing to represent its conception of the public interest. *Id.* at 739, 92 S.Ct. at 1368. However, an organization does have standing to sue for injuries that it suffers itself. *Id.* at 740, 92 S.Ct. at 1368. Additionally, an organization has "standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

In the pending action, the origin of MRLSPAC's standing, if any, is unclear. It may be that MRLSPAC is attempting to sue for its own injuries suffered because it is effectively being deprived of the services of and association with lobbyists, such as Lam and Hammer. The difficulty with MRLSPAC's standing is that Section 15–707 does not impose any civil or criminal penal-

ties on organizations or political committees; Section 15–707 applies only to individuals who are registered lobbyists. The Court need not address the issue of MRLSPAC's standing because, as discussed above, Plaintiff Lam has standing.

## B. Ripeness

■ The doctrine of ripeness is designed to implement the constitutional prohibition against advisory opinions.[3] The focus of ripeness is on the timing of an action. Ripeness is generally determined by considering "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). With respect to challenging the enforcement of a statute, the Supreme Court has established that such a dispute is ripe for judicial review when the party challenging the statute is faced with the dilemma of incurring the disadvantage of complying with the statute or risking penalties for non-compliance. *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

■ Applying the ripeness doctrine to the pending action, the Court notes that Plaintiff Lam is a registered lobbyist subject to the provisions of Section 15–707. There is no indication that the challenged statute would not be enforced if Lam violated it by assuming the position of officer or treasurer of MRLSPAC. In fact, Defendants admit that members of the State Ethics Committee enforce Section 15–707. (Defs.' Mem. in Supp. of Mot. to Dismiss, at 8 n. 9). Accordingly, the Court concludes that the pending action is ripe for judicial review.

## III. Motion to Strike

Plaintiffs filed a Motion to Strike Certain Exhibits in Support of Defendants' Motion for Summary Judgment as inadmissible hearsay. *See Greensboro Prof'l Fire Fight-*

*ers Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir.1995) (involving affidavits containing inadmissible hearsay and primarily unattributed rumors that are neither admissible at trial nor supportive of an opposition to a motion for summary judgment); *Maryland Highways Contractors v. State of Maryland*, 933 F.2d 1246, 1251 (4th Cir.1991) ("[S]everal circuits, including the Fourth Circuit, have stated that hearsay evidence, which is inadmissible at trial can not be considered on a motion for summary judgment."). In particular, Plaintiffs object to the following items:

1. Common Cause/Maryland, Press Release, *Bereano–Controlled PACs Finance Over Half of General Assembly* (Mar. 20, 1990) [Defs.' Mem.Ex. D, Defs.' Reply Ex. C].

2. Marina Sarris, *Top Lobbyist Bruce Bereano Convicted of Mail Fraud*, BALTIMORE SUN (Dec. 1, 1994) [Defs.' Mem.Ex. E].

3. C. Fraser Smith, *Toppled from the Lofty Heights of Political Excess in Annapolis*, BALTIMORE SUN (Dec. 1, 1994) [Defs.' Mem.Ex. E].

4. "Op–Ed", BALTIMORE SUN (Dec. 1, 1994) [Defs.' Mem.Ex. E].

5. Common Cause/Maryland, *Campaign Money in Maryland November 19, 1986—November 20, 1990* (1991) [Defs.' Reply Ex. A].

6. George Nilson, *Report of Governor's Commission to Review the Election Laws* (Jan. 15, 1987) [Defs.' Reply Ex. B].

7. A. Rosenthal, *Drawing the Line: Legislative Ethics in the States* (1996).[4]

8. Harwood Group for Kettering Foundation, *Citizens and Politics: A View*

---

3. In 1789, President George Washington submitted twenty-nine questions relating to international law, neutrality, and the construction of treaties to the United States Supreme Court. Chief Judge John Jay responded that the Supreme Court would not issue advisory opinions on the questions. 3 CORRESPONDENCE & PUBLIC PAPERS OF JOHN JAY at 486.

4. Defendants did not include a copy of this item because it is of substantial length and is available in the Legislative Reference Library in Annapolis, Maryland.

*from Main Street* (June 1991).[5]

Through their Motion to Strike, Plaintiffs essentially argue that Defendants can only establish a compelling governmental interest from the explicit legislative findings in the statute. MD.CODE ANN., STATE GOV'T § 15–101.

Defendants argue that all of the challenged items are admissible because they are "legislative facts" rather than "adjudicative facts". *See generally* DAVIS & PIERCE, ADMINISTRATIVE LAW TREATISE §§ 1.8, 7.5 (3d ed.1994); 2 MCCORMICK ON EVIDENCE § 331 (4th ed.1992). In particular, items 1 through 6 describe the political climate in Maryland in the late 1980's that led to the enactment of Section 15–707 in 1991. Defendants note that item 5 was part of the Legislative Committee File for House Bill 1049 (1991), which ultimately became Section 15–707. Finally, Defendants argue that items 7 and 8 provide additional secondary authority to support Maryland's compelling interests.

■ With respect to Plaintiffs' underlying argument that a compelling governmental interest can only be established from the explicit legislative findings, the Court must reject this argument. Courts regularly go beyond explicit legislative findings to determine the governmental interest underlying a piece of legislation. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 567–68, 111 S.Ct. 2456, 2460–62, 115 L.Ed.2d 504 (1991) (upholding a state statute against First Amendment challenge despite an absence of explicit statement of purpose and any legislative history) (*cited in 23 West Washington Street, Inc. v. City of Hagerstown,* 972 F.2d 342, 1992 WL 183688, at *2 (4th Cir.1992).

■ With respect to the admissibility of each of the challenged items, the Court finds: (1) The Common Cause/Maryland Press Release entitled *Bereano–Controlled PACs Finance Over Half of General Assembly* from March 20, 1990 is admissible because it is attached to an Affidavit from the executive director of Common Cause/Maryland; (Defs.' Reply Ex. C), (2–4) the articles from the BALTIMORE SUN on Bruce Bareano

are not admissible because they were written after enactment of Section 15–707; nevertheless, the Court takes judicial notice of Bereano's conviction for mail fraud in the United States District Court for the District of Maryland; (5) the Common Cause/Maryland report entitled *Campaign Money in Maryland November 19, 1986—November 20, 1990* is admissible because it is part of the Legislative Committee File for House Bill 1049, which became Section 15–707 and, thus, is part of the legislative history; (6) the *Report of Governor's Commission to Review the Election Laws* is admissible because it is an official government report written prior to enactment of Section 15–707 that makes formal recommendations for legislative action; (7–8) the materials written by A. Rosenthal and the Harwood Group for Kettering Foundation are not admissible because they were written after enactment of Section 15–707. Accordingly, Plaintiffs' Motion to Strike will be denied in part and granted in part.

## IV. *Constitutionality of Challenged Statute*

Plaintiffs argue that Section 15–707 violates their First Amendment rights of speech and association and puts them in the untenable position of choosing between two constitutionally protected rights—freedom of speech in the form of lobbying and freedom of association. They assert that "there is no compelling interest to support such a prohibition on such association ..." (Pls.' Mem. in Supp. of Prelim.Inj. at 25).

Defendants, on the other hand, maintain that the challenged statute is narrowly tailored to advance the State's compelling interest in preventing corruption and the appearance of corruption by lobbyists in the electoral and legislative processes, protecting the integrity of the electoral process, and preserving the confidence of individual citizens in their government.

■ In examining the merits of this case, the Court must determine whether the challenged statute implicates the First Amendment. This does not end the inquiry,

---

5. Defendants did not include a copy of this item because it is of substantial length and is available

in the Legislative Reference Library in Annapolis, Maryland.

however, because while lobbying and fund-raising activities in the political arena may implicate First Amendment rights, "neither the right to associate nor the right to participate in political activities is absolute." *Buckley v. Valeo*, 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976). If the First Amendment is implicated, the challenged statute will nevertheless be constitutional if the Court determines that it is narrowly tailored to advance a compelling state interest. *Id.*

 Section 15–707 prohibits lobbyists from serving as officers or treasurer of certain political committees and, thus, implicates the protections of the First Amendment. Consequently, the Court must examine what, if any, compelling state interest underlies the statute.

The Supreme Court has acknowledged that governments have a legitimate interest in regulating lobbyists. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 356 n. 20, 115 S.Ct. 1511, 1523 n. 20, 131 L.Ed.2d 426 (1995) ("The activities of lobbyists who have direct access to elected representatives, if undisclosed, may well present the appearance of corruption."). In fact, courts have upheld laws regulating and monitoring the activities of lobbyists. *See, e.g., United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989, (1954) (holding that federal lobbying act does not violate lobbyists' constitutional guarantees of freedom of speech and petitioning the government).

The Supreme Court also has recognized that governments have a compelling interest in preventing political corruption, i.e., trading of "dollars for political favors," and the appearance of corruption. *FEC v. National Conservative Political Action Comm.*, 470 U.S. 480, 496–97, 105 S.Ct. 1459, 1468, 84 L.Ed.2d 455 (1985) ("We [the Supreme Court] held in *Buckley* and reaffirmed in *Citizens Against Rent Control [v. Berkeley*, 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981)] that preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances."). Toward this end, courts have upheld restrictions on the ability of certain groups of individuals to make political contri-

butions to certain elected officials and candidates. *See United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (ruling that Hatch Act provision which prohibits federal employees from certain partisan political activities and positions is constitutional); *Blount v. SEC*, 61 F.3d 938 (D.C.Cir.1995) (upholding SEC regulation prohibiting certain municipal securities professionals from contributing or soliciting contributions to the political campaigns of state officials from whom they obtained business), *cert. denied,* —— U.S. ——, 116 S.Ct. 1351, 134 L.Ed.2d 520 (1996); *Gwinn v. State Ethics Comm'n*, 262 Ga. 855, 426 S.E.2d 890 (1993) (upholding state law prohibiting insurers from contributing to or on behalf of the insurance commissioner or candidates for that office); *Petition of Soto*, 236 N.J.Super. 303, 565 A.2d 1088 (App.Div.1989) (rejecting constitutional attack on a statute which prohibited key employees of casinos from making political contributions to public officials and candidates), *certif. denied,* 121 N.J. 608, 583 A.2d 310 (1990), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3216, 110 L.Ed.2d 664 (1990).

In the present case, Defendants assert:

A lobbyist who also holds the purse strings of a political committee which donates money to a legislative candidate has the potential to exert tremendous influence over that legislator. Permitting a person to wear the hats of both lobbyist and political committee officer or treasurer increases markedly the likelihood that money will be traded for political favors.

(Defs.' Mem. in Supp. of Mot. for Summ.J. at 22). Beyond these hypothetical concerns over corruption, Defendants point to an actual influence peddling scandal involving lobbyist Bruce Bereano and donations from several political committees he controlled that sparked the General Assembly to enact Section 15–707. Accordingly, the Court concludes that Defendants have articulated a compelling state interest supporting the enactment of Section 15–707.

 Finally, the Court must consider whether Section 15–707 is narrowly tailored to accomplish the compelling state interest.

The Court holds that the statute is narrowly tailored. First, the statute only effects the relationship between legislative members and candidates and the lobbyists who are attempting to influence legislators. Second, the challenged statute is not an absolute ban on lobbyists participation in political committees; lobbyists may perform ministerial tasks for political committees. Third, lobbyists are not prevented from serving on political committees organized to make "independent expenditures" to General Assembly candidates or to support "ballot issues." The statute applies only to political committees that contribute to candidates for the General Assembly.[6] Fourth, lobbyists are not prohibited from making their own independent political contributions. Fifth, lobbyists may advise any organization including their employer or a political committee of the positions taken by candidates and even make recommendations upon request as to who should receive contributions. Finally, the statute only applies to certain regulated lobbyists [7] and does not apply to all individuals who "petition the Government for a redress of grievances." U.S. Const. amend. I.

Based on the foregoing analysis, the Court finds that Section 15–707 of the State Government Article of the Maryland Annotated Code does not violate the United States Constitution; the statute is narrowly tailored to advance a compelling governmental interest. Accordingly, the Court will deny Plaintiffs' Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment.

### ORDER

In accordance with the attached Memorandum, it is this 20th day of August 1997, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiffs' Motion for Summary Judgment BE, and the same IS, hereby DENIED; and

2. That Defendants' Motion for Summary Judgment BE, and the same IS, hereby GRANTED; and

3. That Plaintiffs' Motion to Strike BE, and the same IS, hereby DENIED in part and GRANTED in part; and

4. That Plaintiffs' Motion for Preliminary Injunction BE, and the same IS, hereby DENIED as moot; and

5. That Judgment BE, and the same IS, hereby ENTERED on behalf of Defendants; and

6. That a copy of this Memorandum and Order be mailed to counsel for the parties.

---

6. During the 1997 legislative session, Section 15–707 was expanded to include not just candidates for the General Assembly, but also candidates for Governor, Lieutenant Governor, Attorney General, and Comptroller. 1997 Md. Laws ch. 562. This amendment, which becomes effective October 1, 1997, has not been challenged in this action.

7. Under Maryland's public ethics laws, "regulated lobbyists" are defined as an entity that during a reporting period:
 (1) for the purpose of influencing legislative action:
 (i) communicates with an official or employee of the Legislative Branch or Executive Branch in the presence of that official or employee; and
 (ii) exclusive of the personal travel or subsistence expenses of the entity or a representative of the entity, incurs expenses of at least $100 or earns at least $500 as compensation;
 (2) in connection with or for the purpose of influencing executive action, spends a cumulative value of at least $100 for meals, beverages, special events, or gifts on one or more officials or employees of the Executive branch;
 (3) is employed to influence executive action on a procurement contract that exceeds $100,000;
 (4) spends at least $2,000, including postage, for the express purpose of soliciting others to communicate with an official to influence legislative action or executive action; or
 (5) spends at least $500 to provide compensation to one or more entities required to register under this subsection.
Md.Code Ann., State Gov't § 15–701(a). The challenged restrictions in Section 15–707 only apply to regulated lobbyists who meet the definition of Section 15–701(a)(1), (2), or (3). Regulated lobbyists as defined in Section 15–701(a)(4) or (5) are excluded. Md Code Ann, State Gov't § 15–707(b).