Dear Suzanne S. Fox
On behalf of the State Ethics Commission, you have asked for our opinion whether the lobbying registration requirements of the Maryland Public Ethics Law may apply to a political party regulated under the State Election Law. In particular, you ask "whether political parties which take actions that, if taken by another person or entity, would require registration under Subtitle 7 of the Ethics Law, are subject to these same lobbying registration and reporting requirements."
In our opinion, a political party recognized by and regulated under the State Election Law is not required to register as a lobbyist with the State Ethics Commission pursuant to the Public Ethics Law, as a result of its communications with public officials or employees. A party's communications with voters are regulated by the Election Law, rather than the Public Ethics Law, when those communications are designed to influence voters and advance the party's candidates and associated platform. Only in the unlikely event that those communications bore no relation to any election campaign or issue — a situation that is difficult for us to envision — could those efforts fall within the rubric of "grass roots lobbying" subject to limited regulation under the Public Ethics Law. Finally, a political party could be subject to some provisions of the lobbying law if it hired regulated lobbyists to engage in lobbying activities unrelated to any electoral issue.
 I Background
A. Political Parties and Lobbyists
A political party is an "organization whose aim is to gain control of the government apparatus, usually through the election of its candidates to public office." The Columbia Electronic Encyclopedia (6th ed. 2003). Its functions are "to supply personnel for government positions; to organize these personnel around the formation and implementation of public policy; and to serve in a mediating role between individuals and their government." Id. State law defines "political party" more prosaically as "an organized group that is qualified as a political party in accordance with Title 4 of [the Election Law Article]." Annotated Code of Maryland, Election Law Article ("EL"), § 1-101(gg).
A lobbyist is one who attempts to influence government decisions by presenting the concerns of special interests to legislators and administrators. See The Columbia Electronic Encyclopedia (6th ed. 2003). State law defines "regulated lobbyist" as one who performs certain acts, generally for the purpose of influencing "executive or legislative action," that trigger regulation under the Public Ethics Law. Annotated Code of Maryland, State Government Article ("SG"), §§ 15-102(hh), 15-701.
Political parties affect public policy by influencing the electorate's selection of its representatives and policy makers. Lobbyists affect public policy by influencing the decisions of those representatives and policy makers. While the party affiliations of legislators and other elected officials have implications for the legislative process, the law does not recognize a formal role for the parties in that process.
A political party generally has a "platform" in which it takes positions on policy issues. When one of those issues is addressed by the legislative or executive branch — e.g., in proposed legislation or regulations — that issue may become the subject of lobbying efforts by those affected or interested in the topic. However, the ultimate goal of a political party is to "influence executive or legislative action" not by lobbying, but by ensuring that its adherents win office and thus become the decision makers of executive or legislative action.
Laws regulating lobbyists and those regulating political parties and campaign finance serve similar purposes — both are designed to prevent political corruption or the appearance of political corruption without violating the constitutional rights of free speech and association. See Maryland Right to Life State Political Action Committee v. Weathersbee, 975 F.Supp. 791, 796-97 (D.Md. 1997). Both attempt to achieve those purposes by requiring disclosures by those who seek to influence the electoral or governmental processes and by limiting their efforts in some respects.
To assess whether a political party is subject to regulation as a lobbyist, we first describe how political parties and lobbyists are separately regulated under the State Election Law and the Public Ethics Law, respectively.
B. Regulation of Political Parties under the State Election Law
1. Organization and Recognition
The State Election Law prescribes the basic structure of a political party. A political party must have a State central committee, as well as a constitution and bylaws. EL §§ 4-102(a),4-201, 4-204. Party primaries and the election of individuals to party offices are also addressed by that law. EL § 5-101 et seq.; § 8-201 et seq. However, the internal governance of a political party is determined primarily by its own constitution and bylaws, and only secondarily by the Election Law. EL § 4-101.
The State Election Law recognizes an entity as a political party only if it has the support of a significant number of voters. For example, a petition for recognition of a partisan organization[1] as a new political party must be accompanied by signatures of at least 10,000 registered voters in the State. EL § 4-102(b)(2). To maintain its status as a political party, an entity must attract at least 1% of the vote to its candidate for the highest office on the ballot in a statewide general election or gain the affiliation of at least 1% of the State's registered voters. EL § 4-103(a).
2. Principal Political Parties
The law assigns a special role to the two principal political parties[2] — defined as the party to which the Governor belongs and the party of the runner-up in the last gubernatorial election. EL § 1-101(cc), (jj), (kk). Principal political parties are required to use primary elections, conducted by State officials, to nominate candidates for public office and to elect members of the party's local central committee. EL § 8-202. Thus, members of those parties select their candidates and governing bodies "under official supervision and control." Hennegan v. Geartner, 186 Md. 551, 558,47 A.2d 393 (1946).
3. Role in Electoral Process
The Election Law recognizes the central role of political parties in the electoral process.[3] See Suessmann v. Lamone, 383 Md. 697,708, 862 A.2d 1 (2004) ("the State must share the governance of [primary] elections with the political party from which the primaries are born"). Voters are registered according to party affiliation. EL § 3-303. As a general rule, the party affiliation of a candidate must be listed on the ballot. EL § 9-210(g). Names of candidates are grouped on the ballot by party. EL § 9-210(j). In some circumstances, the law authorizes a party's central committee to designate a candidate to appear on a ballot. See EL §§ 5-901,5-1002. Local boards of elections must select election judges who meet certain criteria as to party affiliation. EL § 10-201.[4] Political parties are authorized to place challengers and watchers at polling places, who may observe election judges as they perform their duties during the election process. EL §§ 10-311(a)(iv), 11-202(c)(1). The State Election Law also requires party representation during the canvass following an election. EL § 11-301(g).
4. Campaign Finance Regulation
The campaign finance provisions of Title 13 of the State Election Law closely regulate the finances of party central committees.[5] In particular, a party may not receive or disburse money or anything else of value unless it has a chairman and treasurer and provides certain information to the State Board of Elections. EL §§ 13-207, 13-208. All contributions to a party must be delivered to its treasurer. EL § 13-218(a). The party treasurer may not make disbursements or incur liabilities without the authority and direction of the party chairman. EL § 13-218(c).
The campaign finance law requires detailed disclosure of contributions and expenditures and sets dollar limits on contributions that a person may make to a party. EL §§ 13-226, 13-301 et seq. The contribution limits do not apply to the extent that a contribution is designated and used for non-electoral purposes. See 70 Opinions of the Attorney General 96, 103 n. 2 (1985); 60 Opinions of the Attorney General 259, 261-62 (1975) (donation specifically limited to maintaining a party's headquarters or staff was not chargeable to the aggregate limit on contributions then in effect); see also 63 Opinions of the Attorney General 263, 268 (1978) (payment by corporation to political action committee for administrative expenses must be reported as contribution under the election law, although not chargeable against corporation's contribution limits). Detailed records must also be kept of assets received and expenditures made. EL § 13-221.
The Election Law requires that a party file detailed campaign finance reports with the State Election Board; those reports must contain details about the party's contributions and expenditures. EL § 13-304; see 59 Opinions of the Attorney General 318, 323 (1974) (party central committee must report all contributions and expenditures, regardless of when they occur). The report must list the name and address of each contributor; it must also list, with respect to expenditures, the name and address of the recipient, as well as the type of expenditure. A report is publicly available and is made accessible over the Internet by the State Board of Elections.[6]
In addition to financial disclosures, the campaign finance law requires disclosure of the identities of those who seek to influence the electorate. Any item of "campaign material" must ordinarily include an authority line, which discloses the name and address of the person responsible for the material. EL § 13-401.[7] Campaign material is any material that contains text, graphics, or other images and relates to a candidate, prospective candidate, or the approval or rejection of a ballot question. EL § 1-101(k). It may involve material transmitted over the Internet or by other electronic media. Id.
C. Regulation of Lobbyists under the Public Ethics Law
Lobbyists are regulated under Subtitle 7 of the Maryland Public Ethics Law. Annotated Code of Maryland, State Government Article ("SG"), § 15-701 et seq.[8] Regulation under the statute is triggered when a person makes specified efforts to influence legislative or executive action, if those efforts are undertaken for compensation or if expenditures exceeding certain threshold amounts accompany those efforts. "Executive action" generally includes any act for which the executive branch of the State is responsible. SG § 15-102(l). "Legislative action" means official action or inaction relating to a bill, resolution, amendment, nomination, appointment, report, or other matter within the jurisdiction of the General Assembly, or a bill presented to the Governor for signature or veto. SG § 15-102(v)(1).[9]
1. Activities Encompassed by Lobbying Law
Compensated communications to influence officials or employees.
An individual or organization falls within the scope of the lobbying law if it receives compensation of at least $5,000 during a six-month reporting period to communicate with officials or employees of the executive and legislative branches for the purpose of influencing actions of those officials or employees. SG § 15-701(a)(1)(ii).[10] If the communication occurs in the presence of the official or employee, compensation of at least $2,500 during the reporting period triggers application of the statute. SG § 15-701(a)(1)(i).
Compensated efforts to influence the award of contracts, grants and loans
An entity is subject to lobbying regulation if it receives compensation to influence executive action on a procurement contract that exceeds $100,000 in value. SG § 15-701(a)(3).[11]
Similarly, an entity is subject to regulation if it receives compensation from a business entity as part of an effort to secure for that business entity a State grant or loan with a value exceeding $100,000. SG § 15-701(a)(4).[12]
Expenditures in connection with communications to influence officials or employees
An entity falls within the statute if, "for the purpose of influencing any legislative action, or, as to the development or adoption of regulations or the development or issuance of an executive order, executive action [it] ... communicates with an official or employee of the Legislative Branch or Executive Branch in the presence of that official or employee; and ... exclusive of the personal travel or subsistence expenses of the entity or a representative of the entity, incurs expenses of at least $500 ... during the reporting period." SG § 15-701(a)(1)(i).
Gifts, meals, and special events for executive branch officials or employees
An entity is also subject to the lobbying law if, "in connection with or for the purpose of influencing any executive action [it] spends a cumulative value of at least $100 for gifts, including meals, beverages, and special events, to one or more officials or employees of the Executive Branch." SG § 15-701(a)(2).[13]
"Grass roots lobbying"
In addition, an entity is subject to the lobbying law if it engages in what is sometimes referred to as "grass roots lobbying" — i.e., soliciting the public or others to contact legislative or executive officials for the purpose of influencing the outcome of a particular decision. In particular, an entity is subject to regulation if it:
 spends at least $2,000, including expenditures for salaries, contractual employees, postage, telecommunications services, electronic services, advertising, printing, and delivery services for the express purpose of soliciting others to communicate with an official to influence legislative action or executive action.
SG § 15-701(a)(5).
Retention of lobbyists
Finally, an entity is subject to regulation under the lobbying law if it hires other lobbyists to undertake a significant lobbying effort — i.e., if it "spends at least $2,500 to provide compensation to one or more [regulated lobbyists]." SG § 15-701(a)(6).
2. Exemptions under the Lobbying Law
Certain categories of individuals are specifically exempted from the registration requirements of the lobbying law: public officials acting in their official capacities, members of the news media, representatives of religious organizations and certain other individuals. SG § 15-701(b)(1). Certain actions that could influence legislative or executive action are also excluded — for example, bill drafting services, advice to clients on the effect of proposed legislation, and appearances before the General Assembly or an executive unit at the request of the government entity. SG § 15-701(b)(2). There is no specific exemption for political parties or party officials.
3. Registration and Reporting Requirements
A regulated lobbyist must register with the Ethics Commission as to each client, and must identify the subject matter of the lobbying effort. SG § 15-703(a)-(b). Registration must occur within five days after the person first performs an act requiring registration. SG § 15-703(d).
A regulated lobbyist must file reports with the Ethics Commission at six-month intervals. SG § 15-704. Each report must set forth the lobbyist's clients, the subject matter of the lobbying effort, total expenditures broken down into various categories,[14] and information concerning meals, receptions, events, and certain meetings. SG § 15-704(b). The report must also identify State officials and employees (including their family members) who have received gifts with a cumulative value over $75 from the lobbyist. SG § 15-704(c). An entity that is "organized and operated for the primary purpose" of lobbying must identify each entity that provided at least 5% of its total receipts during the preceding year. SG § 15-704(d). Lobbyists must also report gifts of meals or beverages provided to executive branch officials and their families. SG § 15-705. A special report is required for a meal or reception to which all members of a legislative unit have been invited. SG § 15-708.
The lobbying law also establishes a reporting requirement concerning political contributions by one who employs a regulated lobbyist. Under SG § 15-715, a person who spends more than $500 on regulated lobbyists during a six-month reporting period must report any political contributions made to statewide elected officials, members of the General Assembly, or candidates for those offices, if cumulative contributions exceed a threshold amount. The filing is to be made with the State Board of Elections; however, a filing of the same information with the Election Board pursuant to the Title 14 disclosure provisions of the Election Law satisfies this requirement. SG § 15-715(c), (h).
4. Restrictions on Political Activities of Lobbyists
A regulated lobbyist may not serve as an officer of a central committee of a political party or conduct fund-raising activity on behalf of the party. SG § 15-713(14)(i)-(ii). Nor may a lobbyist participate in a central committee's actions to fill a public office. SG § 15-713(14)(iii). The campaign finance provisions of the Election Law reiterate that a regulated lobbyist is subject to the limitations on campaign finance activity set forth in the Public Ethics Law. EL § 13-210.
Individuals who qualify as lobbyists under SG § 15-701(a)(1)-(4) — i.e., those who qualify as regulated lobbyists for reasons other than grass roots lobbying or the employment of lobbyists — must report to the Ethics Commission any campaign contributions made directly or indirectly to statewide elected officials, members of the General Assembly, or candidates for those offices. SG § 15-707.[15]
Lobbyists in those four categories[16] are also subject to restrictions on political activities on behalf of statewide elected officials, members of the General Assembly, or candidates for those offices. SG § 15-714. In particular, such a lobbyist may not, for the benefit of those individuals, solicit or transmit political contributions, serve on a fund-raising or political committee, act as treasurer, organize a political committee, or forward tickets or solicitations for political contributions to a potential contributor. Id.[17]
 II Analysis
You ask whether a political party is subject to regulation as a lobbyist. An analysis of the statutory provisions described above reveals that any application of the lobbying law to political parties will be rare and limited.
A. Entities That May Qualify as Lobbyists
Under the Public Ethics Law, an "entity" is required to register as a lobbyist if it meets certain criteria. SG § 15-701(a). An "entity" is defined to include a "person," which in turn means "an individual, receiver, trustee, guardian, personal representative, fiduciary, or representative of any kind and any partnership, firm, association, corporation, or other entity." SG § 15-102(i); SG § 1-101(d). Thus, the definition of "entity" could conceivably encompass a political party.
As noted above, the Public Ethics Law contains an extensive list of entities and activities that are exempt from lobbying regulation. SG § 15-701(b). Although the law exempts news media, religious organizations, associations of municipalities and counties, and a variety of other individuals and entities, it does not explicitly exempt political parties.[18]
A prior opinion of this Office addressed the application of the law regulating lobbyists to a trade association's political action committee ("PAC"). A PAC, like a political party, is an entity regulated by the Election Law. In 1977, a question arose as to whether funds disbursed by a PAC for campaign contributions and tickets to testimonials would be considered lobbying expenses reportable under an earlier version of the lobbying law.[19] Attorney General Burch concluded that the PAC need not report those items as lobbying expenses, noting that those expenditures would be reported under the Election Law. 62 Opinions of the Attorney General 374, 383 (1977). However, the PAC had advised that it did not contemplate paying any expenses in connection with activities of a "legislative agent" — as lobbyists were then called — or witnesses before the Legislature, and the opinion indicated, without significant analysis, that the law regulating legislative agents would have applied to the political action committee, had it done so. Id. at 381. The opinion did not indicate whether the analysis would be different for a political party.
Thus, a political party is not automatically exempt from regulation under the lobbying law.
B. Activities that Require Registration as a Lobbyist
To assess whether the Legislature intended to include political parties among the entities required to register under the lobbying law, we next look to the types of activities that trigger the requirement to register as a regulated lobbyist. As noted above, the Public Ethics Law lists specific activities that trigger that requirement.
1. Activities Covered under SG § 15-701(a)(1)-(4)
As outlined in Part I.C of this opinion, the following activities subject an entity to regulation under the Public Ethics Law as a lobbyist: receiving compensation above a threshold amount for communicating with State officials or employees of the legislative and executive branches to influence their actions; receiving compensation to influence the award of a procurement contract or a business grant or loan valued at more than $100,000; and spending funds to communicate with officials of the legislative and executive branches or to provide gifts, meals, or beverages above certain threshold values for the purpose of influencing executive or legislative action. SG § 15-701(a)(1)-(4).
For several reasons, we do not believe that the General Assembly contemplated that a political party would be subject to regulation as a lobbyist under those provisions.
First, a political party could be expected to routinely engage in some of these activities, yet regulation as a lobbyist would essentially bar the party from acting as a party. For example, a party is likely to spend its funds to communicate with legislators who are members of the party about the party's position on issues before the Legislature; this might be construed as lobbying activity under SG § 15-701(a)(1)(i). However, the Legislature has imposed special requirements on entities that qualify as regulated lobbyists under SG § 15-701(a)(1)-(4). In particular, the Public Ethics Law prohibits the solicitation or transmittal of political contributions by such lobbyists. SG § 15-714(d). By its nature, a political party is necessarily involved in the solicitation and transmittal of political contributions. It is inconceivable that the Legislature, which has heavily regulated campaign and party finances, meant to forbid a party from soliciting political contributions simply because, for example, the party spent more than $500 to communicate with legislators about the party's position on proposed legislation. See SG § 15-701(a)(1)(i). Thus, it does not appear that the General Assembly intended that political parties be required to register as lobbyists on the basis of activities listed in SG § 15-701(a)(1)-(4).
In addition, a key element of registration as a lobbyist involves disclosure of the identity of the person or entity on whose behalf the lobbyist acts. SG § 15-704. When a political party communicates its position on issues before the Legislature or an executive branch agency, it acts on its own behalf to express the views of its members and supporters. By virtue of voter registration records and campaign finance records, the identities of those persons are already well known.
Finally, several of these provisions link regulation as a lobbyist to the receipt of "compensation" to influence public officials. SG § 15-701(a)(1), (3), (4). The Public Ethics Law defines "compensation" as "money or any other valuable thing, regardless of form, received or to be received by a person from an employer for services rendered." SG § 15-102(f). One does not generally conceive of a political party as having an "employer." Thus, it is reasonable to conclude that a political party does not receive "compensation" for attempting to influence legislative or executive action, and the Legislature did not contemplate that those provisions would apply to a political party.
2. Grass Roots Lobbying
An entity is required to register as a regulated lobbyist if it spends at least $2,000 to solicit "others" to communicate with public officials for the purpose of influencing executive or legislative action. SG § 15-701(a)(5). Unlike those who qualify as lobbyists under SG § 15-701(a)(1)-(4), an entity that qualifies as a grass roots lobbyist is not subject to special restrictions on the solicitation or transmittal of political contributions.
An entity that qualifies as a grass roots lobbyist under SG § 15-701(a)(5) is subject to the following requirements and restrictions. It is required to register with the State Ethics Commission within five days after engaging in grass roots lobbying activity, and it is required to report periodically concerning expenditures related to that activity. SG §§ 15-703, 15-704. If it is "organized and operated for the primary purpose of attempting to influence legislative action or executive action," it is required to report the names of those contributors who provide at least 5% of its receipts. SG § 15-704(d).
Much of what a political party does involves spending money to communicate with "others" — i.e., the electorate — to influence legislative or executive action by gaining election of party members to key public positions. Indeed, a party's capacity to communicate with the public is an important part of the associational rights protected by the First Amendment of the United States Constitution. Clingman v. Beaver, ___ U.S. ___, 2005 WL 1200451 (May 23, 2005) at *6. In those efforts, a party is subject to extensive regulation under the State Election Law, including disclosure of contributions and expenditures. We think it unlikely that the Legislature intended to impose duplicative reporting requirements under the Public Ethics Law. Only if a party were to undertake a grass roots lobbying effort that solicited individuals to communicate with public officials, that was targeted at a specific legislative or executive action, and that was completely unrelated to any election campaign, would the "grass roots lobbying" provision of the Public Ethics Law require the party to register as a lobbyist. Given the inevitable connection between a party's public communications, its platform, and its effort to obtain an electoral advantage for its candidates, it is difficult to envision circumstances in which the "grass roots lobbying" provision would apply to a party.[20]
3. Hiring of Regulated Lobbyists
Under SG § 15-701(a)(6), an entity that spends a threshold amount ($2,500) to employ a regulated lobbyist is itself subject to regulation as a lobbyist. A political party could conceivably hire regulated lobbyists to influence legislative action regarding the regulation of political parties as a class unrelated to any electoral issue. However, the obligations imposed on an entity by this provision are limited. If the lobbyists that it employs properly register and make the required reports under the Public Ethics Law, the entity itself is exempt from registration and reporting requirements. SG § 15-701(c). It need only provide a signed authorization to the lobbyist[s] that it employs and, if "organized and operated for the primary purpose of attempting to influence legislative action or executive action," file a report of certain of its receipts. SG §§ 15-702, 15-704(d).[21]
 III Conclusion
In our opinion, a political party recognized by and regulated under the State Election Law is not required to register as a lobbyist with the State Ethics Commission pursuant to the Public Ethics Law, as a result of its communications with public officials or employees. A party's communications with voters are regulated by the Election Law, rather than the Public Ethics Law, when those communications are designed to influence voters and advance the party's candidates and associated platform. Only in the unlikely event that those communications bore no relation to any election campaign or issue — a situation that is difficult for us to envision — could those efforts fall within the rubric of "grass roots lobbying" subject to limited regulation under the Public Ethics Law. Finally, a political party could be subject to some provisions of the lobbying law if it hired regulated lobbyists to engage in lobbying activities unrelated to any electoral issue.
J. Joseph Curran, Jr. Attorney General
Robert N. McDonald Chief Counsel Opinions Advice
[1] A "partisan organization" is defined as a "combination of two or more individuals formed for the purpose of organizing a new political party." EL § 1-101(dd).
[2] For example, membership on the State Board of Elections and the local boards of elections is confined to members of the two principal parties. EL §§ 2-101(e), 2-201(b).
[3] The State Constitution also contemplates a role for political parties in the selection of public officials. For example, when a vacancy occurs in a seat in the General Assembly, the central committee of the party to which the previous incumbent belonged plays a role in the selection of a replacement. Maryland Constitution, Article III, § 13.
[4] Each polling place is to have an equal number of election judges from each of the two principal political parties unless there are at least six judges, in which case there may be a limited number of judges without such an affiliation. EL § 10-201(b).
[5] The campaign finance law sets forth the obligations of "political committees," among others. The term "political committee" encompasses a political party. See EL § 1-101(ee), (ff). A political committee, and therefore a party, is a form of "campaign finance entity" regulated by the Election Law. EL § 1-101(h)(2).
[6] Failure to file can result in a number of sanctions: the imposition of late fees, the disqualification of certain officials from public or party office, forfeiture of salary by public officials, and criminal prosecution. EL § 13-331 through § 13-337.
[7] If a campaign finance entity, such as a political party, is responsible for the campaign material, the authority line is to contain the name and address of its treasurer, although the address may be omitted if it is already on file with the State Board of Elections or a local board. EL § 13-401(a)(1)-(2). Campaign material that is too small to contain the required information need contain only the name and title of the treasurer or other responsible person. EL § 13-401(a)(3).
[8] The State first regulated lobbying activities in 1900, when the General Assembly passed legislation concerning "legislative agents" — defined as persons who received compensation from an employer to attempt to influence matters pending before the General Assembly. Chapter 328, Laws of Maryland 1900, codified at Annotated Code of Maryland, Article 40, § 5 et seq. That statute provided for registration of legislative agents and, as later amended, for the filing of itemized lists of expenditures with the Secretary of State. See 57 Opinions of the Attorney General 604 (1972).
In 1977, the General Assembly undertook a comprehensive revision of the statute. As part of that revision, the term "lobbyist" was substituted for "legislative agent," and the law was broadened to encompass efforts to influence executive as well as legislative action. Chapter 938, Laws of Maryland 1977. The reference to an "employer" was also dropped from the relevant definitions; instead, the status of "lobbyist" was related to whether the person had incurred expenses or received compensation (above certain threshold amounts) in connection with lobbying efforts. The 1977 amendment also added the concept of "grass roots lobbying" — i.e., incurring expenses to solicit others to communicate with executive or legislative officials. Article 40, § 8(a)(3) (1977).
In 1979, the regulation of lobbyists was incorporated in the new Public Ethics Law administered by the State Ethics Commission. Chapter 513, Laws of Maryland 1979. The scope of regulation remained "relatively unchanged" over the next two decades. See Final Report of the Study Commission on Lobbyist Ethics at p. 2 (2001).
In 2001, the General Assembly enacted a lobbyist ethics reform bill that enhanced the remedies and procedures available under the law. Chapter 631, Laws of Maryland 2001. The 2001 law also expanded the reach of the lobbying provisions to encompass entities that earned more than $5000 to influence executive or legislative action by communicating with employees or officials (SG § 15-701(a)(1)(ii)), and entities that are compensated to obtain grants or loans for business entities (SG § 15-701(a)(4)).
[9] The statute gives the following examples of "legislative action": introduction, sponsorship, consideration, debate, amendment, passage, defeat, approval, veto. SG § 15-102(v)(2).
[10] Executive actions covered under this provision include the "development or adoption or regulations or the development or issuance of an executive order" as well as executive decisions that come under the general definition of "legislative action," such as the veto of a bill. SG 15-701(a)(1).
[11] A "bona fide salesperson or commercial selling agency employed or maintained by an employer for the purpose of soliciting or securing a procurement contract" is excepted from this provision unless the person performs other actions that would require registration under other provisions of the statute. SG § 15-701(b)(4).
[12] Two categories of persons are excepted from this provision, if they do not otherwise engage in activities requiring registration: (1) "bona fide" full-time officials or employees of businesses seeking to secure grants or loans; and (2) persons who seek grants or loans for the purpose of locating, relocating, or expanding their businesses in Maryland. SG § 15-701(b)(5).
[13] The Public Ethics Law places significant restrictions on the acceptance of gifts by public officials and employees. See SG § 15-505.
[14] The report must set forth total expenditures in the following categories:
 (i) total individual regulated lobbyist compensation, excluding expenses reported under [the statute];
(ii) office expenses of the regulated lobbyist;
 (iii) professional and technical research and assistance;
 (iv) publications that expressly encourage communication with one or more officials or employees;
 (v) witnesses, including the name of each and the fees and expenses paid to each;
 (vi) except as otherwise reported under [the statute], meals and beverages for officials, employees, or members of the immediate families of officials or employees;
 (vii) except as provided in [SG] § 15-708(d)(2) ..., food, beverages, and incidental expenses for officials of the Legislative Branch for meals and receptions to which all members of any legislative unit were invited;
 (viii) food and beverages for members of the General Assembly at the respective times and geographic locations of meetings of legislative organizations, to which meetings those members' attendance at State expense has been approved by the appropriate presiding officer;
 (ix) food, lodging, and scheduled entertainment for officials and employees at meetings at which the officials and employees were scheduled speakers or scheduled panel participants;
 (x) tickets and free admission extended to members of the General Assembly as a courtesy or ceremony to the office to attend charitable, cultural, and political events sponsored or conducted y the reporting entity and to each of which all members of a legislative unit were invited;
 (xi) other gifts to or for officials, employees, or members of the immediate families of officials or employees; and
(xii) other expenses.
SG § 15-704(b)(2).
[15] Lobbyists in those categories must also report any business transactions with certain State officials, their spouses, or related entities. SG § 15-706.
[16] None of the obligations in SG §§ 15-706, 15-707, or 15-714 pertain to an entity that qualifies as a regulated lobbyist under SG § 15-701(a)(5) or (a)(6).
[17] Such a lobbyist remains free to make personal political contributions and to inform others about a position taken by a candidate or official. SG § 15-714(d)(2).
[18] Some other states that regulate lobbying have explicitly exempted political parties from the definition of lobbyist. The exclusion of political parties has been deemed appropriate in light of other laws directly regulating parties. See Advisory Opinion, 396 Mich. 465, 515-16,242 N.W.2d 3 (1976); see also 1993 Iowa Op. Atty. Gen. 14,1993 WL 264141 at *7 (noting that political parties in Iowa are required to file campaign finance reports that parallel the financial reporting required of lobbyists).
The Federal Regulation of Lobbying Act, as enacted in 1946, also excluded political parties. See Ch. 753 — Pub.L.601, Title III,60 Stat. 812, 839, at § 307 (Aug. 2, 1946); see also United States v. Harriss,347 U.S. 612, 618-19 (1954). That law has since been superseded by the Lobbying Disclosure Law, 2 U.S.C. § 1601 et seq., which does not contain an explicit exemption for political parties.
[19] See footnote 8 above.
[20] Even if a political party is subject to the lobbying law, the provisions of the Election Law still apply to the extent that they impose more stringent requirements than the Public Ethics Law. SG § 15-105.
[21] If it spent more than $500 on regulated lobbyists, it might arguably be subject to the requirement that it report certain political contributions. SG § 15-715. However, the purpose for that requirement would appear to be satisfied by the party's filings, including detailed reports of expenditures, under the Election Law. Cf. SG § 15-715(h) (allowing filings under Title 14 of the Election Law to satisfy reporting requirements under the lobbying law). *Page 92